# IN THE SUPREME COURT OF IOWA

No. 11–1865

Filed February 17, 2012

**IOWA SUPREME COURT ATTORNEY
DISCIPLINARY BOARD,**

      Complainant,

vs.

**ROSCOE A. RIES, JR.,**

      Respondent.

---

On review of the report of the Grievance Commission of the Supreme Court of Iowa.

Grievance commission recommends respondent's license be suspended for six months. **LICENSE SUSPENDED.**

Charles L. Harrington and N. Tré Critelli, Des Moines, for complainant.

Roscoe A. Ries, Jr., Des Moines, pro se.

**MANSFIELD, Justice**.

An attorney's failure to return an inadvertent overpayment of fees forms the basis for this attorney disciplinary proceeding. This case comes before us on the report of a division of the Grievance Commission of the Supreme Court of Iowa. *See* Iowa Ct. R. 35.10(1). The Iowa Supreme Court Attorney Disciplinary Board alleged the respondent, Roscoe Ries, Jr., violated Iowa Rule of Professional Conduct 32:1.15(d). The commission agreed and recommended Ries be suspended from the practice of law. Upon our consideration of the commission's findings of fact, conclusions of law, and recommendations, we also agree that Ries violated rule 32:1.15(d) and order his license suspended for a period of thirty days.

## I. Factual and Procedural Background.[1]

Ries has been a licensed Iowa attorney since 1994. In 2006, he left the law firm where he had been practicing and began practicing alone.

In January 2009, Ries was retained by Shelly Weigel to represent her in a dissolution action against her then-husband Michael Weigel. Mr. Weigel appeared pro se throughout the dissolution proceedings. On January 23, 2009, Ms. Weigel provided Ries with a $500 retainer. Ries filed a petition for dissolution on Ms. Weigel's behalf on January 29, 2009.

On May 15, 2009, a dissolution decree was approved by the district court. Ries continued to have some contact with Ms. Weigel during the following months on issues related to the dissolution.

On January 21, 2010, Ries sent Ms. Weigel a final invoice by e-mail providing a detailed itemization of his time spent and the fees owed.

---

[1]The relevant facts are not in dispute. Our factual summary borrows significantly from the commission's well-written and succinct report.

His cover e-mail explained, "Attached is my invoice showing the total attorney time on your file was $1,891.50, less your $500.00 retainer, leaves a balance of $1,391.50." However, the invoice itself did not reflect the $500 credit. That was mentioned only in the body of the e-mail.

Mr. and Ms. Weigel had an agreement in place to divide Ries's fees. However, by mistake, they paid Ries based upon the itemized invoice without noticing the $500 credit referenced in his e-mail. Thus, in March 2010, Ms. Weigel sent Ries a check for $994.50, and Mr. Weigel sent him a check for $897.00, totaling $1,891.50 rather than the correct amount of $1,391.50.

Upon learning of the error some time later, the Weigels attempted to contact Ries, but were unable to reach him. In a letter dated February 2, 2011, Mr. Weigel threatened legal action against Ries if he did not refund $250 each to Mr. Weigel and Ms. Weigel within ten business days. Ries failed to respond to the letter.

On March 3, 2011, the Weigels filed a small claims action for money damages against Ries in the Polk County District Court. Ries did not file an answer or appear at the hearing and, as a result, on April 15, 2011, the court entered a default judgment against him for $500 plus interest and costs.

At approximately the same time, Mr. Weigel filed a complaint against Ries with the Board. In a May 1, 2011 response to the Board's inquiry, Ries acknowledged the overpayment and informed the Board that he would refund the $500 plus interest.

On August 16, 2011, the Board filed a complaint against Ries, alleging that he violated rule 32:1.15(d). Ries did not answer the complaint, nor did he participate in a pretrial scheduling call. He did appear at the October 24, 2011 hearing convened by a division of the

grievance commission. At the hearing, Ries acknowledged he had not yet repaid the $500. He explained:

> [I]t is simply a matter of not having the wherewithal to do it. . . .
>
> I'm not making any, you know, excuses for that. And I would just ask the Board to take that into consideration. Like I said, it's not a scenario where I tried to deceive these folks, and they ended up paying more money than what was owed, and, you know, upon realizing it those funds had already been used to pay bills, and that leaves me in this scenario I'm in now.
>
> . . . .
>
> To be honest with you, you know, it's embarrassment. I mean, for a 42-year-old attorney not to have $500 to make that refund, it's just embarrassing.

Ries also explained he did not appear at the small claims hearing because he "didn't contest it." Ries said that he did not file an answer to the Board's complaint or appear for the scheduling hearing because "it was a matter of being sheerly embarrassed about the whole situation." Ries added that he "absolutely" planned to repay the Weigels when he had funds, but as of the hearing he did not have $100, let alone $500. Ries said he has been getting support from his girlfriend and friends and has contemplated filing bankruptcy.

Following the hearing, the commission issued a report finding that Ries had violated rule 32:1.15(d), which requires a lawyer to "promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive." The commission recommended a six-month suspension of Ries's license to practice law.

## II. Scope of Review.

We review attorney disciplinary proceedings de novo. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Fields,* 790 N.W.2d 791, 793 (Iowa

2010). We give respectful consideration to the commission's findings and recommendations, but we are not bound by them. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Lickiss,* 786 N.W.2d 860, 864 (Iowa 2010). "The board has the burden of proving attorney misconduct by a convincing preponderance of the evidence." *Id.*

### III. Review of Alleged Ethical Violation.

The Board alleged, and the commission found, that Ries violated rule 32:1.15(d). This rule states:

> Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

Iowa R. Prof'l Conduct 32:1.15(d).

We agree with the commission and the Board that this case "deals with the somewhat unique circumstances of an attorney being accidentally overpaid for the services already rendered and therefore earned." No one contends that Ries misled his client into overpaying him. His January 21, 2010 e-mail informed Ms. Weigel of the $500 credit. The Weigels simply failed to notice that point and inadvertently paid $500 more than was due.

The question then is whether an attorney commits an ethical violation when he fails to refund an undisputed overpayment after the overpayment has been brought to his or her attention. We are not aware of any precedent directly on point. However, the present situation is directly covered by the literal language of the rule, which provides that the attorney "shall promptly deliver to the client or third person any

funds or other property that the client or third person is entitled to receive." In this case, Ries failed to promptly deliver to the Weigels $500 in funds that they were entitled to receive. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Boles*, 808 N.W.2d 431, 438 (Iowa 2012) (holding an attorney violated rule 32:1.15(d) when he took four and seventeen months respectively to refund unearned fees to two separate clients); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Parrish*, 801 N.W.2d 580, 586–87 (Iowa 2011) (finding an attorney violated rule 32:1.15(d) by failing to return advance payments which had not been earned); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Wagner*, 768 N.W.2d 279, 289 (Iowa 2009) (finding a failure to promptly return unearned fees violated rule 32:1.15); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Casey*, 761 N.W.2d 53, 59–60 (Iowa 2009) (holding that an untimely disbursement of settlement proceeds violated rule 32:1.15(d)).[2]

## IV. Consideration of Appropriate Sanction.

Having determined that Ries violated rule 32:1.15(d) by failing to promptly repay funds that were due to a client and the client's ex-husband, we must now consider the appropriate sanction.

---

[2]*See also Iowa Supreme Ct. Att'y Disciplinary Bd. v. Plumb*, 766 N.W.2d 626, 632 (Iowa 2009) (finding an attorney's failure to refund the unearned portion of an advance fee for several months violated former Iowa Code of Professional Responsibility for Lawyers DR 9−102(B)(4) requiring a lawyer to "[p]romptly pay or deliver to the client as requested by [the] client the funds . . . in the possession of the lawyer which the client is entitled to receive"); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Ireland*, 748 N.W.2d 498, 501–02 (Iowa 2008) (finding that a lawyer's failure to refund an unused $1000 retainer to his client where no work was performed violated former DR 9−102(B)(4)); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Ramey*, 746 N.W.2d 50, 55 (Iowa 2008) (finding a failure to return a retainer where no services were performed violated former DR 9−102(B)(4)); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. D'Angelo*, 710 N.W.2d 226, 233, 235 (Iowa 2006) (determining that failure to send money to client for over three years violated former DR 9−102(B)(4)); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Honken*, 688 N.W.2d 812, 818–19 (Iowa 2004) (finding a failure to return an unearned advance fee violated former DR 9−102(B)(4)).

We have repeatedly held that the goal of our ethical rules is " 'to maintain public confidence in the legal profession as well as to provide a policing mechanism for poor lawyering.' " In deciding an appropriate sanction, we consider " 'the nature of the violations, protection of the public, deterrence of similar misconduct by others, the lawyer's fitness to practice, and [the court's] duty to uphold the integrity of the profession in the eyes of the public.' " Consideration of aggravating and mitigating circumstances present in the disciplinary action is also important.

*Iowa Supreme Ct. Att'y Disciplinary Bd. v. Knopf*, 793 N.W.2d 525, 530–31 (Iowa 2011) (internal citations omitted). We also take into account the sanctions we have imposed in other, similar cases. *See Casey*, 761 N.W.2d at 62 (stating that in fashioning the appropriate sanction, "we look to prior similar cases while remaining cognizant of their limited usefulness due to the variations in their facts"). "Often, the distinction between the punishment imposed depends upon the existence of multiple instances of neglect, past disciplinary problems, and other companion violations, including uncooperativeness in the disciplinary investigation." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Lesyshen*, 712 N.W.2d 101, 106 (Iowa 2006).

The present case does not involve any misrepresentation or dishonesty, but has resulted in $500 of financial benefit to Ries to which he was not entitled (and a $500 loss to the Weigels). There is no proof that Ries was aware he had been overpaid until the Weigels alerted him to this fact. Also, while it seems difficult to believe that a practicing attorney could not come up with $500 to repay a client obligation, we share the commission's view that we are "forced to take Mr. Ries at his word" concerning his indigence.

Although Ries's lack of resources could potentially be considered a mitigating factor for his failure to comply with rule 32:1.15(d), we also think the commission makes a valid observation: Ries told the Board in

May 2011 that he would remedy the situation by repaying the Weigels, but then failed to do what he had promised. Moreover, as noted by the commission, Ries failed to return "even a portion of the Weigels' money." Certainly Ries could have paid *something* as a demonstration of good faith.

We agree with the commission that Ries's failure to respond to the Board or participate in the pretrial conference should be considered an aggravating factor. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Cunningham,* 812 N.W.2d 541, 551 (Iowa 2012) ("Failure to respond to and cooperate with the Board's investigation is also an aggravating factor."). And, we agree that Ries's recent prior reprimand should be considered another aggravating factor. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Van Ginkel,* 809 N.W.2d 96, 110 (Iowa 2012) (treating two prior reprimands as an aggravating factor even though they were "somewhat dated"). In 2010, Ries was publicly reprimanded for allowing two clients' appeals to be dismissed involuntarily and ignoring numerous client inquiries about the status of another matter. The common thread between those matters and the present case is a pattern of ignoring responsibilities as an attorney and letting events simply run their course. Clients deserve better.

Because the facts of this case are somewhat unique, we have no direct parallel in our precedents. Most of our cases relating to a failure to promptly return client funds also have presented other significant ethical lapses and aggravating circumstances. For example, in *Wagner,* we imposed a six-month suspension on an attorney who (among other things) failed to promptly return unearned fees after prematurely taking probate fee payments for work that was not complete. 768 N.W.2d at 289. Unlike Ries, Wagner himself brought about the circumstances

under which he had control of assets that did not belong to him, and his case also involved numerous additional violations including neglect, misrepresentations to the court, and failure to deposit fees in a trust account. Wagner also had a prior reprimand for neglect and another for misrepresentation, and there were no mitigating circumstances for his behavior. *Id.* at 288–89.

In *Casey*, the attorney not only failed to disburse settlement proceeds for a period of years, he also neglected a personal injury case and a probate matter, took probate fees to which he was not entitled, and misrepresented the decedent's marital status to the court and the Iowa Department of Revenue and Finance. 761 N.W.2d at 56–57. We suspended his license for a period of three months. *Id.* at 63.

In *Parrish*, the attorney withdrew fees from two separate client trust accounts before they had been earned and without providing a contemporaneous accounting, then failed to refund the amounts due to the clients. 801 N.W.2d at 584–85. As here, the refunds still had not been made as of the date of the hearing. *Id.* at 585. We suspended this attorney's law license for sixty days. *Id.* at 590. *Parrish*, we believe, involved more egregious conduct than here. In that case, the attorney withdrew funds from client retainers on a number of occasions before the fees had been earned. When it was later determined that the clients were due refunds, the attorney failed to repay the funds. *Id.* at 584–85.

In *Boles*, the attorney's ethical transgressions included two distinct failures to promptly refund unearned advance fees. 808 N.W.2d at 439. We ordered a thirty-day suspension. *Id.* at 443. By the time of the hearing, the fees had been repaid, and there were considerable mitigating factors, but the case involved more than just a failure to repay unearned fees. We explained that the attorney's violations "primarily result from

his flagrant, multiyear disregard for the billing and accounting requirements of our profession." *Id.* at 441; *see also Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Feeney*, 657 N.W.2d 454, 457 (Iowa 2003) (ordering a thirty-day suspension where one of the attorney's violations involved a failure to promptly repay client funds); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Gilliam*, 560 N.W.2d 1, 3–4 (Iowa 1997) (ordering a thirty-day suspension for an attorney who had not paid a client her share of a settlement payment, had not deposited a refund payment in a client trust account, and had various trust account irregularities, despite the attorney's lack of a prior disciplinary record and his good reputation and contributions to his community).

Upon our review, we conclude that a thirty-day suspension is appropriate. Although some aggravating factors are present, including a recent reprimand for neglect, a failure to initially respond to the Board, and the absence of any attempt to make even a partial refund, this matter nonetheless involves a single violation without proven dishonesty or fraudulent conduct. The genesis of the problem was an accidental overpayment of a relatively small amount of money.

## V. Disposition.

We suspend Ries's license to practice law in the State of Iowa for thirty days. This suspension applies to all facets of the practice of law. *See* Iowa Ct. R. 35.12(3). Ries must comply with Iowa Court Rule 35.22 dealing with the notification of clients and counsel. Ries is also ordered to pay the Weigels $500 plus interest and costs as adjudged in the small claims action. No later than five days before the end of the suspension period, Ries shall provide to the Board proof that this sum has been paid. The costs of this action are taxed to Ries pursuant to Iowa Court Rule 35.26. Absent an objection by the Board, and under the conditions set

forth above, Ries's license to practice law will be reinstated on the day after the thirty-day suspension period expires. *See* Iowa Ct. R. 35.12(2).

**LICENSE SUSPENDED.**