# IN THE SUPREME COURT OF IOWA

No. 12–1024

Filed February 15, 2013

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Appellee,

vs.

**RICHARD SCOTT RHINEHART,**

Appellant.

On appeal from the report of the Grievance Commission of the Supreme Court of Iowa.

Grievance commission reports respondent committed ethical infractions and recommends his license be suspended for sixty days. **LICENSE SUSPENDED.**

Leon F. Spies of Mellon & Spies, Iowa City, for appellant.

Charles L. Harrington, Des Moines, and Margaret E. Johnson, Sidney, for appellee.

**WATERMAN, Justice.**

The Iowa Supreme Court Attorney Disciplinary Board (Board) brought a two-count complaint against Richard Scott Rhinehart alleging he violated nine rules of professional conduct. The first count arose from the district court's ruling, affirmed on appeal, that Rhinehart had committed extrinsic fraud responding to his wife's discovery in his own protracted marital dissolution proceeding. The second count involved Rhinehart's billing dispute with his clients in a residential construction defect case. The grievance commission applied issue preclusion to count one and found Rhinehart had violated all six rules charged by the Board. The commission based on a stipulated record also found Rhinehart violated three rules as charged in count two. The commission recommended we suspend Rhinehart's license to practice law for sixty days.

On our de novo review, we apply issue preclusion based on the district court's adjudication that Rhinehart committed extrinsic fraud and conclude he violated two of the rules charged in count one. We hold the four other rules at issue in count one apply only to a lawyer acting as an advocate for a client and thus were inapplicable to Rhinehart as a party in his own divorce proceeding. As to count two, we hold Rhinehart violated two of the three rules charged by the Board. We suspend Rhinehart's license to practice law for sixty days.

## I. Scope of Review.

Our review of attorney disciplinary proceedings is de novo. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Stowers*, 823 N.W.2d 1, 4 (Iowa 2012). While we give the commission's findings respectful consideration, we are not bound by them. *Id.* The Board has the burden to prove attorney misconduct by a convincing preponderance of the evidence. *Id.*

We may increase or decrease the sanction recommended by the commission. *Id.*

## II.  Prior Proceedings and Factual Background.

The Board's two-count complaint against Rhinehart arose from his actions in two matters, which we discuss separately.

**A.  Rhinehart's Dissolution Proceeding.**  The first count of the Board's complaint involves Rhinehart's failure to disclose two contingent fee cases in his own dissolution proceeding.  In January 2003, Rhinehart's now ex-wife, Deborah Rhinehart, filed an action in Woodbury County for dissolution of their marriage.  Their case went to trial on September 11 and 12.  At the request of the parties, the district court entered a decree dissolving their marriage on December 29.  A supplemental decree addressing the remaining issues was entered by the court on March 18, 2004.  Both parties appealed, and our court affirmed the decree on further review.

In December 2005, Deborah filed a petition to correct, vacate, or modify the 2004 decree.  Deborah's petition alleged Rhinehart had committed extrinsic fraud by failing to disclose in discovery two pending contingent-fee cases.  A key contested issue in the dissolution proceeding had been the value of Rhinehart's law practice and the income generated from his practice.  Deborah alleged Rhinehart's failure to disclose the two cases affected the court's ability to issue a fair and equitable division of their marital property because those cases were not taken into account by the court or the parties' experts in valuing Rhinehart's law practice.

The cases Rhinehart failed to disclose involved two clients, A.G. and J.G., siblings who were seeking compensation from Father George McFadden and his employer, the Diocese of Sioux City.  Rhinehart first met with A.G. and J.G. to discuss their claims in July 2002, while

Rhinehart and Deborah were still married. A.G. and J.G. alleged they had been sexually abused by Father McFadden in their childhood. Given the sensitive nature of their claims, Rhinehart contends he assured A.G. and J.G. that he would keep their information confidential. During this first meeting, A.G. and J.G. equivocated whether they wanted to sue Father McFadden and the diocese. Rhinehart had only limited contact with A.G. and J.G. the rest of that year and the only work he did for them was to correspond with counsel for the Sioux City diocese regarding the process for bringing a priest sex abuse claim.

As part of his law firm's year-end bookkeeping in 2002, Rhinehart sent A.G. and J.G. a letter to determine whether his firm should close their file. Rhinehart's letter was prompted by a message from A.G. and J.G. indicating that they no longer wished to pursue their claims. Rhinehart encouraged them to reconsider their decision because, in Omaha, similar "claims are now being responded to fairly promptly with reasonable monetary compensation." This letter was sent the month before Deborah filed for divorce.

A.G. and J.G. met with Rhinehart again on January 20, 2003, the same month Deborah filed for divorce. It was at this meeting that Rhinehart and A.G. and J.G. executed the contingent fee agreements Rhinehart later failed to disclose. Following this meeting, Rhinehart wrote demand letters on behalf of A.G. and J.G. and arranged a meeting between them and the bishop to discuss their claims.

Rhinehart was deposed in his dissolution proceeding on June 30. He was asked to bring certain information regarding his law practice with him to the deposition, including "a list of all plaintiffs, workers' comp, personal injury, and contingent fee cases of every kind that are currently open at his firm." Deborah's attorney sought these records for the

purpose of valuing Rhinehart's law practice. The parties agreed to maintain the confidentiality of that information. Rhinehart nevertheless failed to include A.G. and J.G.'s cases in the list of contingent fee cases he provided to Deborah's attorney. Rhinehart also failed to disclose them in his deposition testimony and did not tell his own attorney about the cases.

In July 2003, shortly after his deposition, Rhinehart met again with A.G. and J.G. On July 16, Rhinehart wrote a letter to the diocese's attorney stating, in part: "[A.G. and J.G.] are prepared to take action and have agreed to file a lawsuit naming Father McFadden and the diocese of Sioux City as defendants." The letter enclosed a draft petition and made a settlement demand of $700,000, or $350,000 for each client. Rhinehart exchanged further correspondence regarding settlement before filing A.G. and J.G.'s lawsuit on August 27.

Rhinehart never supplemented his discovery responses to disclose these cases. Rhinehart also failed to disclose these cases during his testimony at the dissolution trial held the following month. Rather, while defending his position that his wife should bear her own attorney fees in the dissolution, Rhinehart testified at trial as follows: "Since I have laid all the cards on the table, haven't hidden any assets or money, I don't think it is fair [to have to pay hers]." Rhinehart also testified that he had "been forthright to the best of [his] ability about all of the assets and debts that [he has]." Counsel for Rhinehart and for Deborah and their experts opining on the value of his law practice remained unaware of the priest sex abuse litigation. The district court entered its decree valuing the law practice and dividing the marital property without taking into account these contingent fee cases. Twenty months later, Deborah filed

her action to correct, vacate, or modify the property division after she learned Rhinehart had concealed these contingent fee cases.

The district court conducted a three-day bench trial on Deborah's action to reopen her dissolution decree. The district court entered a fifty-nine-page ruling on October 24, 2008. In this ruling, the district court found Rhinehart had committed extrinsic fraud as follows:

> Deb has met her burden of proving by clear and convincing evidence that [Rhinehart] committed extrinsic fraud when he failed to disclose his representation of [J.G. and A.G.] as clients with claims against Father McFadden and the Sioux City Diocese at the time his discovery deposition was taken on June 30, 2003, and further when he failed to supplement his discovery responses to disclose that he had filed lawsuits on their behalf prior to or during the underlying dissolution trial held on September 11, 2003. [Rhinehart] committed this fraud, not through his false testimony during his discovery deposition, but rather through his deliberate concealment of [these] cases beginning with his discovery deposition, and continuing through the underlying trial in this case.

The district court also noted in its ruling that Rhinehart "has demonstrated a lack of credibility, and also a willingness to say whatever he thinks will benefit him throughout the course of the present proceedings."

The district court denied Rhinehart's motion to reconsider or enlarge its findings. Rhinehart appealed, and we transferred his appeal to the court of appeals. The court of appeals affirmed the district court's ruling on extrinsic fraud. We denied Rhinehart's application for further review.

On remand, Rhinehart presented new evidence in an attempt to rebut the district court's finding of fraud, including an affidavit and testimony from his daughter alleging that Deborah was aware of the two contingent fee cases during the pendency of the divorce proceedings.

The district court refused to reconsider its ruling that Rhinehart committed extrinsic fraud:

> Even if this court considered this "new" evidence from Scott, however, the court finds no reason to set aside the original trial court's findings and conclusions, or those of the Court of Appeals on review, regarding Scott's extrinsic fraud. . . . Deborah was aware that Scott considered taking on Catholic sex abuse cases before the dissolution trial. Her awareness did not mitigate his duty to disclose those sex abuse clients along with the others he listed during pre-dissolution discovery and during the original dissolution trial in September 2003. . . . Thus, this court does not find any material difference in the facts surrounding Scott's extrinsic fraud during this trial, as compared to the July 2007 trial. The legal conclusions of the trial court in July 2007 and the Court of Appeals on review that Deborah did not commit extrinsic fraud and that Scott did commit extrinsic fraud are the law of the case and will not be altered by this court.

On December 14, 2011, the district court modified its previous decree dividing the property and awarding support. The district court determined Rhinehart's failure to disclose A.G. and J.G.'s cases did not affect the property division or support award because recovery on those cases was speculative. Rhinehart appealed the district court's refusal to reopen its finding of extrinsic fraud. On February 13, 2013, the court of appeals affirmed, stating, "The district court was correct in not reopening that issue." *In re Marriage of Rhinehart*, No. 12–0287 (Iowa Ct. App. Feb. 13, 2013).

**B. The Merrigan Fee Dispute.** The second count of the Board's complaint involves Rhinehart's fee dispute with Andrew and Susan Merrigan. In June 2005, the Merrigans retained Rhinehart to represent them in a residential construction defect lawsuit against a general contractor, insurance company, and roofing subcontractor. The Merrigans initially agreed to pay Rhinehart on an hourly basis. After their legal fees mounted, in December 2006 the Merrigans and Rhinehart

renegotiated their fee agreement to substitute a contingent fee contract. The written contingent fee agreement provided Rhinehart would receive one-third of any recovery and stated that "[f]ees previously paid to Attorney under prior hourly Attorney Fee Contract will be deducted from funds received as part of any judgment recovered." The Merrigans by then had paid Rhinehart $13,963.63 in hourly fees under the original fee agreement.

In June 2007, one of the defendants settled for $10,000. Rhinehart credited $3330 against the hourly attorney fees the Merrigans had already paid, leaving a balance of $10,633.63 to offset Rhinehart's contingent fee in any future recovery.

The remaining defendants offered the Merrigans $400,000 to settle before trial. The Merrigans rejected this offer against Rhinehart's advice. The Merrigans also opted to try their case to a jury contrary to Rhinehart's advice that they waive their jury demand and try their case to the court. The jury awarded the Merrigans $33,280.87, merely eight percent of the pretrial settlement offer Rhinehart had urged them to accept. One-third of that amount is $11,082.53. Under the contingent fee agreement, this amount was to be reduced by $10,633.63—the balance of the hourly fees the Merrigans had previously paid Rhinehart.

Rhinehart nevertheless retained the entire $11,082.53, without crediting the hourly fees paid as required by the governing fee agreement and without his clients' approval. In a June 2009 letter to the Merrigans accompanying the judgment breakdown, Rhinehart wrote:

> Although you have never responded to our requests for an explanation why you refused to take our advice throughout the litigation process, we want to reiterate for the last time, why we are disappointed by your accusations that we are not entitled to our 33 1/3% attorney fees:

1. You had a settlement offer of $400,000 which we encouraged you accept. We explained the strong possibility of a jury awarding you little to no award at trial. You complained that you would take a loss. Had you taken our advice, your loss would have been significantly less and you would not have endured the stress of trial.

2. We strongly recommended that you waive the jury and allow the judge to rule in this case. We explained how a judge is more likely to award a larger judgment, juries are very critical of Plaintiffs and their testimony and often allow personal opinions to interfere with their decisions.

3. [We] spent more than 1,000 hours working on your case. . . . Although we agreed to take your case on a contingency basis, we, too, incurred a huge loss (well over $150,000) based on your refusal to accept the $400,000 settlement and refusal to waive the jury.

During the commission's April 5, 2012 hearing, Rhinehart stipulated as follows regarding count two:

Respondent Mr. Rhinehart, represented Andy and Suzy Merrigan in a lawsuit. . . . [C]lients and Respondent's fee agreement originally called for Respondent, Mr. Rhinehart, to be paid on an hourly basis. . . . [I]n December 2006 because the Merrigans could not afford to pay Respondent's firm on an hourly basis, the Merrigans and Respondent entered into a contingent fee agreement . . . . [T]he Merrigans case was tried to a jury resulting in a jury verdict of approximately $30,000. . . . [P]roceeds of that were placed in Respondent's firm trust account. . . . [O]n June 17, 2009, Respondent disbursed the proceeds from the trust account together with a letter . . . . Respondent believed at the time he was justified in not deducting fees already paid to his firm under the hourly fee agreement. . . . [H]e now believes that disbursement should have been made in conformance with a contingent fee agreement and agrees to pay the Merrigans the amount due under that agreement.

On April 10, five days after the commission's hearing and roughly three years after he pocketed the disputed fees over his clients' objection, Rhinehart refunded $11,082.53 to the Merrigans.

We will discuss the commission's findings and conclusions with our review of Rhinehart's alleged violations below.

### III. Ethical Violations.

**A. Count I—Extrinsic Fraud.** In count one, the Board alleged Rhinehart committed extrinsic fraud during the dissolution proceeding with his wife in violation of Iowa Rules of Professional Conduct 32:3.3(a)(1), 32:3.3(a)(3), 32:3.3(c), 32:3.4(c), 32:8.4(c), and 32:8.4(d). The Board gave notice it intended to invoke issue preclusion with regard to Rhinehart's alleged violations under this count. The commission gave preclusive effect to the district court's extrinsic fraud ruling and found Rhinehart violated each of the charged rules. Rhinehart argues the Board's offensive use of issue preclusion is not appropriate in this case because his "alleged fraud was neither material nor relevant to the disposition of the property and support issues, nor was it 'necessary and essential' to the resulting district court judgment." Rhinehart also argues that he could not have violated rules 32:3.3 and 32:3.4 in his own divorce litigation because those rules only apply to an attorney representing a client in a pending proceeding.

We begin our analysis by determining whether an attorney may violate rules 32:3.3 and 32:3.4 by his conduct as a party when he is not serving as an advocate representing a client. We then consider whether the commission properly gave preclusive effect to the district court's finding that Rhinehart committed extrinsic fraud.

1. *Applicability of rules 32:3.3 and 32:3.4.* Rule 32:3.3 requires attorney candor toward the tribunal. The Board alleged in its complaint that Rhinehart violated three provisions of this section by committing extrinsic fraud in his own dissolution proceeding. Rule 32:3.3(a)(1) prohibits an attorney from "knowingly . . . mak[ing] a false statement of fact or law to a tribunal or fail[ing] to correct a false statement of material fact or law previously made to the tribunal by the lawyer." Iowa R. Prof'l

Conduct 32:3.3(a)(1). Rule 32:3.3(a)(3) prohibits an attorney from knowingly offering "evidence that the lawyer knows to be false" and requires the attorney to "take reasonable remedial measures, including, if necessary, disclosure to the tribunal" if the attorney later learns the evidence is false. *Id.* r. 32:3.3(a)(3). The final provision of rule 32:3.3 the Board alleges Rhinehart violated provides that these "duties . . . [shall] continue to the conclusion of the proceeding, and apply even if compliance requires disclosure of information otherwise protected by rule 32:1.6." *Id.* r. 32:3.3(c).

We have noted lawyers "are required to obey the disciplinary rules when acting pro se or in a personal capacity." *Stowers*, 823 N.W.2d at 13. Nevertheless, some rules target only the conduct of an attorney while serving as an advocate representing a client. For example, the comments to rule 32:3.3 indicate the rule applies only to an attorney representing clients in the proceedings of a tribunal:

> [1] This rule governs the conduct of a lawyer who is representing a client in the proceedings of a tribunal. . . . It also applies when the lawyer is representing a client in an ancillary proceeding conducted pursuant to the tribunal's adjudicative authority, such as a deposition. . . .
> [2] This rule sets forth the special duties of lawyers as officers of the court to avoid conduct that undermines the integrity of the adjudicative process. A lawyer acting as an advocate in an adjudicative proceeding has an obligation to present the client's case with persuasive force.

Iowa R. Prof'l Conduct 32:3.3 cmts. 1–2; *see also State ex rel. Okla. Bar Ass'n v. Dobbs*, 94 P.3d 31, 52 (Okla. 2004) (holding attorney who made false statements to a tribunal did not violate its rule 32:3.3 because "[t]hat rule addresses professional misconduct *as an advocate* for making false statements to a tribunal, not false statements by a lawyer as a witness"). This conclusion is buttressed by the fact that this rule is

found in a section of the rules entitled, "Advocate." *See State v. Tague*, 676 N.W.2d 197, 201–02 (Iowa 2004) (" 'Although the title of a statute cannot limit the plain meaning of the text, it can be considered in determining legislative intent.' " (quoting *T & K Roofing Co. v. Iowa Dep't of Educ.*, 593 N.W.2d 159, 163 (Iowa 1999))). The Board cites no authority, nor have we found any, for applying rule 32:3.3 to a lawyer as a party in his own case while he is not acting as an advocate representing a client before a tribunal. We hold Rhinehart did not violate rule 32:3.3 because he was not serving as an advocate representing a client in the dissolution proceeding.

We reach the same conclusion as to rule 32:3.4(c), which the Board alleges Rhinehart violated when he failed to disclose A.G. and J.G.'s cases in his own divorce proceedings. Rule 32:3.4(c) prohibits an attorney from "knowingly disobey[ing] an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists." Iowa R. Prof'l Conduct 32:3.4(c). This rule, like rule 32:3.3, is located in the section of the rules entitled "Advocate," which helps show the rule applies only when an attorney is representing a client. The Board cites no authority, and we found none applying rule 32:3.4 to a lawyer for conduct in his own case while not representing a client. Accordingly, because Rhinehart was not serving as an advocate representing a client, we hold rule 32:3.4(c) did not apply to him when he committed extrinsic fraud as a party in his own dissolution proceeding.

2. *Issue preclusion.* The district court found Rhinehart had committed extrinsic fraud in the dissolution-of-marriage proceeding with his wife. This ruling was unanimously affirmed by a three-judge panel of the Iowa Court of Appeals. Rhinehart applied for, and was denied, further review by our court. On remand, Rhinehart presented new

evidence in an attempt to rebut the district court's finding of fraud; however, the district court declined to revisit its previous ruling. Rhinehart appealed the district court's refusal to revisit its previous ruling. The court of appeals affirmed.

The Board contends the district court's ruling has preclusive effect. Iowa Court Rule 35.7(3) allows the Board to invoke issue preclusion in attorney disciplinary proceedings when the following conditions are met:

> *a.* The issue has been resolved in a civil proceeding that resulted in a final judgment, or in a criminal proceeding that resulted in a finding of guilt, even if the Iowa Supreme Court Attorney Disciplinary Board was not a party to the prior proceeding.
> *b.* The burden of proof in the prior proceeding was greater than a mere preponderance of the evidence.
> *c.* The party seeking preclusive effect has given written notice to the opposing party, not less than ten days prior to the hearing, of the party's intention to invoke issue preclusion.

Iowa Ct. R. 35.7(3); *see also Stowers*, 823 N.W.2d at 7–8; *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Iversen*, 723 N.W.2d 806, 809 (Iowa 2006).

The three enumerated requirements of rule 35.7(3) are satisfied here. First, the extrinsic fraud issue was resolved in a civil proceeding that resulted in a final judgment. *See Stowers,* 823 N.W.2d at 8; *Emp'rs Mut. Cas. Co. v. Van Haaften,* 815 N.W.2d 17, 24–25 (Iowa 2012). Second, the burden of proof for extrinsic fraud—clear and convincing evidence—is greater than a mere preponderance of the evidence. *See Johnson v. Mitchell,* 489 N.W.2d 411, 415 (Iowa Ct. App. 1992) (noting that a finding of extrinsic fraud "must be supported by clear, unequivocal, and convincing evidence"). Third, the Board provided Rhinehart with notice that it intended to give preclusive effect to the

district court's finding of extrinsic fraud several months before the hearing.

There are several additional requirements when the Board is using issue preclusion offensively:

> (1) the issues . . . sought to be precluded in the . . . disciplinary [proceeding] are identical to the issues . . . in the prior . . . action;
> (2) the issues . . . were raised and litigated in the prior . . . action;
> (3) the issues . . . were material and relevant to the disposition of the prior . . . action; and
> (4) the . . . determination of the . . . issues [in the prior action] [was] necessary and essential to the resulting judgment . . . .

*Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. D.J.I.*, 545 N.W.2d 866, 875 (Iowa 1996).

Rhinehart argues the Board may not invoke offensive issue preclusion because the ruling that he committed extrinsic fraud was neither material and relevant nor necessary and essential to the district court's judgment amending the property division. Rhinehart relies on the district court's determination that the value of the two contingency cases he failed to disclose was "too speculative" to impact the court's revised division of the Rhineharts' property.

The problem with Rhinehart's position is that he focuses on the wrong ruling. The adjudication to which we give preclusive effect is not the final judgment entered December 14, 2011, amending the property division, but rather, the fifty-nine-page order entered October 24, 2008, granting Deborah's petition to reopen the 2004 dissolution decree. A dissolution decree dividing property is a final judgment that may only be modified or vacated under limited circumstances. *See* Iowa R. Civ. P. 1.1012 (listing grounds for vacating or modifying judgment). One ground

on which a court may vacate or modify a dissolution decree is if "[extrinsic] fraud [was] practiced in obtaining it." *Id.*; *see also In re Marriage of Bauder*, 316 N.W.2d 697, 699 (Iowa Ct. App. 1981).

Here, Deborah petitioned the district court to vacate the decree it had previously entered dividing the Rhineharts' property and awarding support. In the petition, Deborah argued the district court had the authority to vacate the decree on two grounds: extrinsic fraud and newly discovered material evidence. In its October 24, 2008 ruling, the district court granted Deborah's petition to vacate the 2004 decree based on its adjudication that Rhinehart committed extrinsic fraud. The finding of extrinsic fraud was both necessary and essential and material and relevant to the October 24, 2008 ruling.[1] The extrinsic fraud finding was affirmed on appeal, never subsequently vacated, and remains the law of the case in Rhinehart's dissolution proceeding. Issue preclusion applies here, even though the October 24, 2008 ruling is not itself a final judgment. As Judge Friendly wrote in an oft-cited passage:

> Whether a judgment, not "final" [for purposes of appeal], ought nevertheless be considered "final" in the sense of precluding further litigation of the same issue, turns upon such factors as the nature of the decision (i.e., that it was not avowedly tentative), the adequacy of the hearing, and the opportunity for review. "Finality" in the context here relevant may mean little more than the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again.

*Lummus Co. v. Commonwealth Oil Ref. Co.*, 297 F.2d 80, 89 (2d Cir. 1961); *see also Robinette v. Jones*, 476 F.3d 585, 589–90 (8th Cir. 2007)

---

[1]The district court also found that the existence of newly discovered evidence could provide a ground for the court to vacate the ruling, but determined that ground depended on its finding of extrinsic fraud to avoid the one-year deadline in Iowa Rule of Civil Procedure 1.1012.

(holding interlocutory ruling on contested immunity defense in prior action voluntarily dismissed by plaintiff precluded relitigation of same issue in subsequent action). "[T]he finality requirement for issue preclusion has become less rigorous." *Robinette*, 476 F.3d at 589 (citing cases applying issue preclusion "to matters resolved by preliminary rulings"). *See generally* 18A Charles Alan Wright et al., *Federal Practice and Procedure* § 4434 (2d ed. 2012) (explaining "practical finality" for purposes of issue preclusion).

We give preclusive effect to the extrinsic fraud finding, even though the district court later ruled the amended property division was unaffected by the fraud. In *Stowers*, we rejected a similar effort to avoid the preclusive effect of a contempt ruling that did not form the basis of the ultimate final judgment in the prior proceeding:

> Stowers contends the contempt ruling in *Reis* was not final because on remand the district court did not enter a contempt judgment, but a discovery sanction. Stowers places undue emphasis on the specific entry of judgment on remand. "Finality is a term of art for res judicata." [*Van Haaften*, 815 N.W.2d at 25]. "Finality for purposes of res judicata requires [only] that a firm and considered decision has been made by the court . . . ." *Id.* at 25, 26 (holding judicial acceptance of an *Alford* plea of guilty to theft charge is final for issue preclusion purposes in a subsequent civil collection action, even though the criminal record of theft was expunged upon successful completion of the terms of a deferred judgment).

> The ultimate final judgment need not be on the specific issue to be given preclusive effect. *Id.* ("[I]t is the court's factual-basis determination when accepting the plea that provides the plea's preclusive effect, not the subsequent sentence and deferred judgment."). We affirmed the district court's determination that Stowers's emails were in contempt of the protective order. [*Reis v. Iowa Dist. Ct.*, 787 N.W.2d 61, 71 (Iowa 2010)] ("The district court's determination holding Stowers in contempt of the protective order is affirmed."). The resolution of that issue is sufficiently "firm and considered" to be final for issue preclusion purposes. The issue was "resolved" in the contempt proceedings for purposes of rule 35.7(3)(*a*).

*Stowers,* 823 N.W.2d at 8.

For the same reasons, we hold the extrinsic fraud finding has preclusive effect here. This result is consistent with the purposes of issue preclusion—avoiding unnecessary relitigation of issues, avoiding the risk of inconsistent adjudications of the same issue, and promoting judicial economy and efficiency. *See Van Haaften,* 815 N.W.2d at 22. Rhinehart had a full and fair opportunity to litigate the issue of his extrinsic fraud in his dissolution proceedings, including an appeal. He is not entitled to another bite at the apple through relitigation of the same issue in this disciplinary proceeding.

3. *Rule violations based on extrinsic fraud.* Rule 32:8.4(c) states that "[i]t is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." Extrinsic fraud itself is "conduct involving dishonesty, fraud, deceit, or misrepresentation." Iowa R. Prof'l Conduct 32:8.4(c); *see also In re Marriage of Cutler*, 588 N.W.2d 425, 430 (Iowa 1999) (listing "misrepresentation or failure to disclose when under a legal duty to do so" and "intent to deceive" as two factors required to establish extrinsic fraud). Accordingly, because we give preclusive effect to the district court's finding that Rhinehart committed extrinsic fraud, we find Rhinehart violated rule 32:8.4(c) when he failed to disclose the contingent fee cases during the dissolution proceeding.

Under rule 32:8.4(d), an attorney commits professional misconduct when he "engage[s] in conduct that is prejudicial to the administration of justice." An attorney's conduct is prejudicial to the administration of justice when it violates "the well-understood norms and conventions of the practice of law" such that it hampers "the efficient and proper operation of the courts or of ancillary systems upon which the courts

rely." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Axt*, 791 N.W.2d 98, 102 (Iowa 2010) (citation and internal quotation marks omitted)).

Our prior cases have consistently held that an attorney representing a client violates rule 32:8.4(d) when his misconduct results in additional court proceedings or causes court proceedings to be delayed or dismissed. *See, e.g.*, *Stowers*, 823 N.W.2d at 15 ("Stowers's emails violated the protective order and triggered a series of unnecessary court proceedings, including rulings by the district court, court of appeals, and this court [and therefore] constituted conduct prejudicial to the administration of justice."); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Schmidt*, 796 N.W.2d 33, 41–42 (Iowa 2011) (holding attorney's contact with a represented opposing party that required opposing counsel to withdraw was prejudicial to the administration of justice); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Gailey*, 790 N.W.2d 801, 807 (Iowa 2010) (holding attorney who represented his son in divorce proceedings violated rule prohibiting conduct prejudicial to the administration of justice when he aided his son in violating a no-contact order). When an attorney is not representing a client, however, whether the attorney violates this rule depends on whether the attorney's personal conduct is related to the practice of law. *See Schmidt*, 796 N.W.2d at 42 ("We have held that, when the basis of a domestic abuse conviction results from personal conduct that is unrelated to the practice of law, no violation of rule 32:8.4(d) occurs."); *see also Axt*, 791 N.W.2d at 102 (holding Board failed to prove a violation of rule 32:8.4(d) because attorney's repeated violations of a no-contact order "were based on personal conduct that was unrelated to the practice of law"); Iowa *Supreme Ct. Att'y Disciplinary Bd. v. Weaver*, 750 N.W.2d 71, 90–91 (Iowa 2008) (holding attorney who made false accusations against a judge sentencing him in a criminal

matter violated the rule prohibiting conduct prejudicial to the administration of justice because he "left the impression that courts do not do justice").

Rhinehart argues he did not violate this rule because his

failure to supplement his discovery responses as a private litigant, and not in the course of representing a client or himself, did not hamper the operation of the courts nor did it serve to interfere with any of his professional relationships.

We disagree. Rhinehart's misconduct in his divorce proceeding resulted in additional court proceedings, including rulings by the district court and court of appeals, that otherwise would have been unnecessary had Rhinehart disclosed the cases. Conduct that results in such unnecessary proceedings clearly impedes the efficient operation of the court. While it is true that Rhinehart was not representing a client at the time he committed the extrinsic fraud, we cannot say his conduct was unrelated to the practice of law or that it did not interfere with his professional relationships. *See Schmidt*, 796 N.W.2d at 42 (noting that attorney's conduct "did not affect [attorney]'s relationships with his clients, fellow lawyers, and judges" in holding attorney did not violate rule 32:8.4(d)). Rhinehart's misconduct occurred during a judicial proceeding before a court in which Rhinehart regularly practiced. An attorney who commits fraud responding to discovery and testifying in a court proceeding—even if the proceeding involves only a personal matter—necessarily damages his credibility as a professional. The professional consequences of Rhinehart's conduct were reflected in his testimony before the commission:

[P]rofessionally it's – it's resulted in clients not—long-time clients not coming back. It's—I have clients that are currently my clients that sent me e-mails that say something like, "Well, I heard about you. I Googled you. I think you need to get out of my case." Or cases involving Judge Lester,

where I had to either get out of the case or he did. So I've had to file a motion to recuse Judge Lester in one case.

Accordingly, we hold Rhinehart violated rule 32:8.4(d) by committing extrinsic fraud in his own divorce proceedings.

**B. Count II—Merrigan Fee Dispute.** In count two, the Board alleged Rhinehart violated rules 32:1.5(a), 32:1.15(e), and 32:8.4(c) by failing to credit his clients for the fees they had previously paid to him in accordance with their contingent fee agreement. Relying on the factual stipulations Rhinehart made during the hearing, the commission found that Rhinehart violated all three of the rules charged by the Board. Upon our de novo review, we hold that Rhinehart violated two of the Board's charged rules.

Rule 32:1.5(a) prohibits a lawyer from "mak[ing] an agreement for, charg[ing], or collect[ing] an unreasonable fee or an unreasonable amount for expenses." An attorney violates this provision by failing to refund fees that are unearned. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Parrish*, 801 N.W.2d 580, 586 (Iowa 2011). Here, Rhinehart violated this rule when he failed to deduct the fees the Merrigans had previously paid under the hourly fee agreement, as was required under their subsequent contingent fee agreement. By failing to deduct this amount, Rhinehart retained fees that he had not earned under the controlling fee agreement. Accordingly, we hold the Board has established Rhinehart collected an unreasonable fee in violation of rule 32:1.5(a).

The next rule the Board alleged Rhinehart violated in the Rhinehart fee dispute was rule 32:1.15(e). This rule provides as follows:

> When in the course of representation a lawyer is in possession of property in which two or more persons (one of whom may be the lawyer) claim interests, the property shall be kept separate by the lawyer until the dispute is resolved. The lawyer shall promptly distribute all portions of the property as to which the interests are not in dispute.

"[W]hen the dispute over entitlement to the funds is between *the lawyer* and either a client or a third party . . . the lawyer must not take advantage of physical control of the funds." 1 Geoffrey C. Hazard, Jr. et al., *The Law of Lawyering* § 19.7, at 19-14 (3d ed. 2005-2 Supp.). In such cases, the lawyer must keep "the disputed portion of the funds . . . in a trust account and the lawyer should suggest means for prompt resolution of the dispute, such as arbitration." Iowa R. Prof'l Conduct 32:1.15 cmt. 3.

Here, Rhinehart violated this rule in every respect. At the time he disbursed the fees to himself, Rhinehart was aware there was a dispute over the fees and acknowledged as much in his letter to the Merrigans. In the face of this dispute, rather than keeping the fees in a separate account until the dispute was resolved as is required under the rule, Rhinehart paid the fees out to himself. Rhinehart explained that he only did so after the Merrigans refused to engage in a dialog with him regarding the dispute. Rhinehart's attempted rationalization of his actions falls short. The Merrigans' refusal to discuss the issue did not alleviate the dispute over the fees and did not entitle Rhinehart to the fees. Further, Rhinehart does not claim he made any effort to resolve the dispute or that he suggested the parties attempt to resolve the dispute over the fees in arbitration or some other proceeding. Accordingly, we hold Rhinehart violated rule 32:1.15(e).

Rule 32:8.4(c) states that "[i]t is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." To establish a violation of this rule, the Board must prove the lawyer acted with a "level of scienter that is greater than negligence." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Netti*, 797 N.W.2d 591, 605 (Iowa 2011); *see also Iowa Supreme Ct. Att'y Disciplinary Bd. v.*

*Boles*, 808 N.W.2d 431, 440 (Iowa 2012) (holding Board did not establish a violation of rule 32:8.4(c) because Board failed to prove the attorney "possessed the requisite scienter" in not properly accounting for and refunding fees). Here, there is no evidence that Rhinehart was dishonest, deceitful, or that he committed fraud or made any misrepresentation during the course of the fee dispute. To the contrary, Rhinehart openly informed the Merrigans that he was disbursing the attorney fees to himself. The Board has not proven by a convincing preponderance of the evidence that Rhinehart violated rule 32:8.4(c).

### IV. Sanction.

Although prior cases are instructive, we determine the appropriate sanctions in light of the unique circumstances of the case before us. *Stowers*, 823 N.W.2d at 15. When crafting a sanction,

> " 'we consider the nature of the violations, the attorney's fitness to continue in the practice of law, the protection of society from those unfit to practice law, the need to uphold public confidence in the justice system, deterrence, maintenance of the reputation of the bar as a whole, and any aggravating or mitigating circumstances.' "

*Id.* at 15–16 (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kallsen*, 814 N.W.2d 233, 239 (Iowa 2012)). In recommending a sixty day suspension for Rhinehart, the commission noted:

> [T]he Respondent continued to exhibit little or no remorse in either count of the Complaint. He continued to attempt to relitigate the extrinsic fraud issue, and even in stipulating to Count II, attempted to justify his actions. His acknowledgement of wrongdoing as to the Merrigans was last minute, at the beginning of the hearing, over three months after the filing of the Complaint and over two years, ten months after his June 17, 2009, letter to the Merrigans stating he would not follow the terms of the fee agreement.

The Board argues that a sixty-day suspension is too lenient and requests a longer suspension precluding automatic reinstatement. We agree with the commission that a sixty-day suspension is warranted.

The finding of extrinsic fraud warrants a suspension. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Wanek*, 589 N.W.2d 265, 271 (Iowa 1999) (suspending for two months the license of an attorney who misrepresented material facts in deposition testimony); *Comm. Prof'l Ethics & Conduct v. Zimmerman*, 354 N.W.2d 235, 238 (Iowa 1984) (suspending for ninety days the license of an attorney who made misrepresentations to court). Rhinehart's violation of his discovery obligations contributed to years of litigation in his dissolution proceedings. We consider in mitigation the fact the district court ultimately concluded his nondisclosure of the two contingent fee cases did not materially affect the value of his law practice to warrant revising the marital property distribution.

Rhinehart has no plausible excuse for violating his contingent fee agreement by retaining the $10,633 the Merrigans paid him previously. We recently surveyed our cases sanctioning attorneys who improperly retained unearned fees, noting suspensions ranging from thirty days to six months. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Ries*, 812 N.W.2d 594, 598–99 (Iowa 2012) (discussing sanctions given in cases involving a failure to refund unearned fees). In *Ries*, we gave a thirty-day suspension to an attorney who failed to refund a $500 overpayment to his clients, even after he became aware of his failure to do so. *Id.* We noted aggravating factors, "including a recent reprimand for neglect, a failure to initially respond to the Board, and the absence of any attempt to make even a partial refund." *Id.* at 599. We emphasized, however, that Ries had only a single violation and that it did not involve any

"dishonesty or fraudulent conduct." *Id.* We consider Rhinehart's long-delayed refund of the Merrigans' money in determining the appropriate sanction. *See Boles*, 808 N.W.2d at 442 ("We also consider the lack of harm to his clients apart from the delayed refunds.").

Rhinehart's general reputation for being a hardworking, highly competent, zealous advocate and his lack of prior disciplinary problems are mitigating factors. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Isaacson*, 565 N.W.2d 315, 317 (Iowa 1997).

After careful consideration of the record, mitigating and aggravating factors, and precedent, we conclude a sixty-day suspension is appropriate.

## V. Conclusion.

We suspend Rhinehart's license to practice law in this state with no possibility of reinstatement for sixty days. The suspension applies to all facets of the practice of law, as provided in Iowa Court Rule 35.13(3), and requires notification to clients, as provided by Iowa Court Rule 35.23. The costs of this proceeding are assessed against Rhinehart pursuant to rule 35.27(1). Absent an objection by the Board, Rhinehart shall be reinstated after the sixty-day suspension period under the condition that all costs have been paid. Iowa Ct. R. 35.13(2).

**LICENSE SUSPENDED.**

All justices concur except Hecht, J., who takes no part.