**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**
Complainant,

v.

**Jason A. SPRINGER, Respondent.**

No. 17-1338

Supreme Court of Iowa.

Filed December 1, 2017

See also 866 F.3d 949.

Tara van Brederode and Wendell J. Harms, Des Moines, for complainant.

Mark McCormick of Belin McCormick, P.C., Des Moines, for respondent.

CADY, Chief Justice.

The Iowa Supreme Court Attorney Disciplinary Board charged attorney Jason Springer with violating the rules of professional conduct for preparing fraudulent documents in transactions involving the sale of real estate. The Iowa Supreme Court Grievance Commission found Springer violated the rules and recommended that his license to practice law be revoked. Upon our de novo review, we find Springer violated the Iowa Rules of Professional Conduct and impose a suspension of two years.

## I. Background Facts and Proceedings.

Jason Springer was admitted to practice law in Iowa in 2002. He resides in Madrid and is well regarded by other lawyers in the profession. He is active in a number of community activities, including volunteering for the Madrid Fire Department and coaching youth basketball and baseball. He is also active in his church. He suffered from alcohol abuse prior to seeking treatment in 2015. Prior to this proceeding, Springer practiced real estate and personal injury law and had no disciplinary history. His license to practice law, however, was suspended on November 9, 2016, in a separate action based on the conduct giving rise to this proceeding.

The conduct responsible for this proceeding relates back to 2008 when Springer assisted two clients in organizing a business that negotiated the sale of homes for financially distressed owners in lieu of foreclosure. His clients would first negotiate a price for the house that the lender would accept in settlement of the outstanding balance of the mortgage. Once the sale price was fixed, the clients would purchase the home for the short sale amount. Then, often the same day or a few days later, the clients would sell the home to a prearranged third party for a profit.

Springer assisted his clients in the two-part transaction. First, Springer and his office staff would perform the work needed to close the sale of the house between the parties to the foreclosure and his clients. This work included completing a HUD-1 form, disbursing the funds, and collecting a fee. Second, Springer and his office staff

would perform the services necessary to close the second sale of the home to the third party. Again, this work included completing a HUD–1 form, disbursing the funds, and collecting a fee. From 2009 to 2011, Springer assisted his clients in approximately forty such transactions.

In seven of the transactions, however, Springer's clients were without sufficient funds to purchase the homes secured by the delinquent mortgages. During such transactions, to complete the first sale, Springer would falsely represent to the lender on the HUD–1 form that his clients paid cash at the short sale closing. The clients would present Springer with a check made payable to the lender for the purchase price, which Springer would hold to deposit until the second sale was closed. Springer would then disburse the sale proceeds from the second sale to his clients by depositing the proceeds into their account. Once the funds were secured, he would deposit the check representing the sale price in the first transaction drawn on the account from his clients to the mortgage lender.

The false documents prepared by Springer and his staff in the course of the transaction concealed from the lender that Springer's clients did not have sufficient funds to purchase the home. The documents further concealed that the clients used the proceeds from the second sale to finance the first sale.

In 2011, Springer learned while attending a continuing legal education seminar that the short sale transactions violated federal law. He stopped performing the services for his clients a short time later.

In 2015, Springer was convicted in federal court of seven counts of bank fraud for knowingly executing a scheme to defraud a financial institution in violation of 18 U.S.C. § 1344(1) (2012). He was ultimately sentenced to four months in prison,

placed on probation for two years, and fined in the amount of $15,000. He served the sentence in 2016 and 2017.

In 2016, the Board filed a complaint against Springer. It charged Springer with violating Iowa Rules of Professional Conduct 32:1.2(d) (assisting a client in conduct the lawyer knows is criminal or fraudulent), 32:1.16(a)(1) (failing to withdraw from the representation of a client if the representation will result in violating a rule of professional conduct), 32:4.1(a) (knowingly making a false statement of material fact or law to a third person), 32:4.1(b) (knowingly failing to disclose a material fact to a third person when disclosure is necessary to avoid assisting a criminal or fraudulent act), and 32:8.4(b) (committing a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects).

After a hearing in which Springer stipulated that offensive issue preclusion based on his criminal convictions applied to the charges in the complaint, the grievance commission found that Springer engaged in the conduct underlying each count of bank fraud. The commission then concluded Springer violated rules 32:1.2(d), 32:1.16(a)(1), 32:4.1(a), 32:4.1(b), and 32:8.4(b). The commission recommended that Springer's license to practice law be revoked. Springer resists the grievance commission's recommended sanction.

## II. Scope of Review.

We review attorney disciplinary proceedings de novo. Iowa Ct. R. 36.21(1). The Board must "prove attorney misconduct by a convincing preponderance of the evidence." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Engelmann*, 840 N.W.2d 156, 158 (Iowa 2013). "This burden is less than proof beyond a reasonable doubt, but

more than the preponderance standard required in the usual civil case." *Id.* (quoting *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Lett*, 674 N.W.2d 139, 142 (Iowa 2004)). Although we respectfully consider the commission's factual findings and recommended sanction, we are not bound by them. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Bieber*, 824 N.W.2d 514, 518 (Iowa 2012). If we conclude an attorney violated a rule of professional conduct, we "may impose a lesser or greater sanction than recommended by the commission." *Id.* (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Murphy*, 800 N.W.2d 37, 42 (Iowa 2011)).

### III. Violations.

■ **A. Assisting a Client in Criminal or Fraudulent Conduct.** An attorney may not "counsel a client to engage, or assist a client, in conduct that the lawyer knows is criminal or fraudulent." Iowa R. Prof'l Conduct 32:1.2(d). In *Engelmann*, we found rule 32:1.2(d) was violated by an attorney when he reported inflated sale prices on HUD–1 forms and other documents submitted to lenders in the course of real estate transactions in order to conceal that buyers were receiving cash kickbacks of the difference between the actual price and the inflated price. 840 N.W.2d at 161–63. While Springer did not prepare the fraudulent HUD–1 forms in this case, he was responsible for their accuracy when closing the short sales with the financial institutions. The jury in the criminal case concluded Springer "knowingly" and "with the intent to defraud" submitted false HUD–1 forms that deceived the financial institutions. Springer knew his clients did not have sufficient funds, yet affirmatively represented to the financial institutions they had paid cash for the home. Further, Springer was a sophisticated real estate attorney who had closed between 10,000 and 12,000 loans before assisting his clients with their short sales. Accordingly, we apply issue preclusion and find that Springer assisted his clients in criminal conduct, in violation of rule 32:1.2(d).

■ **B. Failure to Withdraw from Representation if the Representation Will Result in Violating a Rule of Professional Conduct.** An attorney "shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if ... the representation will result in violation of the Iowa Rules of Professional Conduct or other law." Iowa R. Prof'l Conduct 32:1.16(a)(1). Springer stopped representing the two clients who operated the fraudulent scheme, but not before assisting them for two years. His representation of the clients violated rule 32:1.16(a)(1).

■ **C. Knowingly Making a False Statement of Material Fact to a Third Party.** An attorney shall not knowingly, "[i]n the course of representing a client, ... make a false statement of material fact or law to a third person." *Id.* r. 32:4.1(a). In *Bieber*, we found an attorney violated rule 32:4.1(a) when he intentionally misstated the sales price to a financial lender in order to obtain a greater loan amount than was necessary for the purchase of a home, despite the lender not requesting income verification. 824 N.W.2d at 519–20. Regardless of any income verification, the lender was induced to lend $8500 more than necessary for the purchase of the home, and thus the attorney's false statement was material. *Id.* at 520.

In this case, the critical condition involved in a short sale is that the financial institution receives the negotiated-for short sale price in lieu of the remainder of the debtor's mortgage balance. Based on Springer's assurances in the HUD–1 forms, the financial institutions released their mortgage interests in the homes even

though Springer's clients did not have sufficient funds to pay for the short sale.

In affirming Springer's criminal conviction on appeal, the United States Court of Appeals for the Eighth Circuit aptly described the material nature of the false information provided by Springer. It stated "there was always the risk that the closing on the second transaction might hit a snag, and [that Springer's clients] would not be able to pay for property." *United States v. Springer*, 866 F.3d 949, 955 (8th Cir. 2017). Further, "[i]f it had come to light that a check was worthless after the financial institution had already released its mortgage, then the financial institution could face a significant loss." *Id.* Moreover, during the criminal trial, representatives from each financial institution testified that the institution, had it known all of the facts surrounding the transaction, would not have approved the short sale. *Id.* Springer's false claims on the HUD–1 forms were false statements of material fact to third parties, and therefore Springer violated rule 32:4.1(a).

### ■ D. Knowingly Failing to Disclose a Material Fact When Necessary to Avoid Assisting a Criminal or Fraudulent Act.

An attorney shall not knowingly, "[i]n the course of representing a client, . . . fail to disclose a material fact to a third person when disclosure is necessary to avoid assisting a criminal or fraudulent act by a client." Iowa R. Prof'l Conduct 32:4.1(b). However, an attorney will not be found in violation of this rule if the failure to disclose the material fact stems from a confidentiality obligation under rule 32:1.6. *Id.*

> Rule [32:]4.1(b) is implicated only if the lawyer has become involved (presumably unwittingly) in the client's criminal or fraudulent scheme, in such a way that the lawyer would be "assisting" the client by remaining silent after discovery of the client's wrongdoing.

*Iowa Supreme Ct. Att'y Disciplinary Bd. v. Haskovec*, 869 N.W.2d 554, 559 (Iowa 2015) (alteration in original) (quoting 16 Gregory C. Sisk & Mark S. Cady, *Iowa Practice Series™: Lawyer and Judicial Ethics* § 8.1(d), at 771 (2015)).

Springer's testimony at the disciplinary hearing reveals he took several steps to diminish the criminality of his clients' conduct. For instance, Springer testified that in all of the closings he made sure the financial institutions knew his clients intended to resell the property "at a higher value at a very close, if not same day." As well, Springer testified that although he was unaware his clients were negotiating on both sides of the transaction, the filings with the Iowa Secretary of State revealed them as both the buyers and sellers in the scheme to the financial institutions.

Nevertheless, Springer's actions failed to notify the financial institutions that his clients were using the proceeds of the second sale to fund the first sale. The criminal trial confirmed Springer knew his clients lacked the funds to finance the first sale, yet intentionally failed to disclose this information to the financial institutions. The scheme exposed the institutions to a risk of loss. The finding of intent to defraud in the criminal proceeding has preclusive effect and supports a finding in this case that Springer assisted his clients in their criminal conduct by remaining silent in violation of rule 32:4.1(b).

### ■ E. Committing a Criminal Act That Reflects Adversely on a Lawyer's Honesty, Trustworthiness, or Fitness to Practice Law.

"It is professional misconduct for a lawyer to . . . commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects." Iowa R. Prof'l Conduct 32:8.4(b). Not all criminal convic-

tions trigger application of rule 32:8.4(b). Rather,

> [t]here must be some rational connection other than the criminality of the act between the conduct and the actor's fitness to practice law. Pertinent considerations include the lawyer's mental state; the extent to which the act demonstrates disrespect for the law or law enforcement; the presence or absence of a victim; the extent of actual or potential injury to a victim; and the presence or absence of a pattern of criminal conduct.

*Bieber*, 824 N.W.2d at 520 (alteration in original) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Weaver*, 812 N.W.2d 4, 11 (Iowa 2012)).

In *Engelmann*, we found an attorney violated rule 32:8.4(b) because he acted with intent to defraud, there was significant financial harm, and the attorney's repeated failure to disclose the true sale prices on the HUD–1 forms demonstrated a pattern of criminal conduct. 840 N.W.2d at 163. In this case, a similar rational connection exists between the criminality of Springer's actions and his fitness to practice law. Springer may not have been the architect of the fraudulent transaction, but his services as a lawyer made the scheme succeed and exposed the financial institutions to a risk of loss. Further, Springer's criminal act was not one instance of bad judgment, but seven transactions across two years. Springer had multiple opportunities to decline representation or decline to submit false HUD–1 forms, but instead continued to participate in his clients' scheme. Springer's pattern of illegal conduct "indicate[s] [an] indifference to legal obligation." Iowa R. Prof'l Conduct 32:8.4 cmt. 2. Therefore, we apply issue preclusion and find that Springer was convicted of bank fraud, and his conviction reflects adversely on his honesty, trustworthiness, and fitness as a lawyer in violation of rule 32:8.4(b).

## IV. Sanctions.

Because Springer has violated rules 32:1.2(d), 32:1.16(a)(1), 32:4.1(a), 32:4.1(b), and 32:8.4(b), we turn to the appropriate sanction. Although there is no established sanction for any specific type of misconduct, prior cases are instructive. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Stoller*, 879 N.W.2d 199, 218 (Iowa 2016). When tailoring a sanction to the specific misconduct at issue,

> we consider the nature of the violations, the attorney's fitness to continue in the practice of law, the protection of society from those unfit to practice law, the need to uphold public confidence in the justice system, deterrence, maintenance of the reputation of the bar as a whole, and any aggravating or mitigating circumstances.

*Id.* at 219 (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Blessum*, 861 N.W.2d 575, 591 (Iowa 2015)). Additionally, Iowa Code section 602.10122 instructs that a felony conviction is sufficient cause for suspending or revoking an attorney's license. Iowa Code § 602.10122(1) (2017). The Board recommends that we revoke Springer's license.

We have previously revoked the licenses of attorneys who aided their clients in defrauding financial institutions. In *Iowa Supreme Court Attorney Disciplinary Board v. Nelsen*, an attorney "knowingly and willfully participated in his client's scheme to defraud [a financial institution] when his clients converted the funds owed to the bank." 807 N.W.2d 259, 267 (Iowa 2011). There, the attorney's clients "were able to convert the bank's funds because Nelsen knowingly made false representations to [the financial institution] that he would protect the accounts receivable by

depositing them into his trust account until the parties resolved the legal dispute." *Id.* Although Nelsen did not see any financial gain from his clients' scheme beyond legal fees, we noted "our obligation to protect the public from theft and deceit" and revoked his license. *Id.* (quoting *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Carr*, 588 N.W.2d 127, 129 (Iowa 1999)).

In *Engelmann*, we revoked the license of an attorney who was convicted of nine felony counts, including wire fraud, bank fraud, and conspiracy. 840 N.W.2d at 157, 167. The court ordered him to pay $392,937.73 in restitution and sentenced him to thirty-six months in prison, reflecting the gravity of his actions. *Id.* at 160. We concluded Engelmann was a sophisticated real estate attorney who was aware of and responsible for his actions. *Id.* at 164. As well, in contrast with the other attorney involved in the scheme, *see Bieber*, 824 N.W.2d at 522–28, the jury "concluded beyond a reasonable doubt that Engelmann intended to cause the lenders financial harm" and thus acted with a more culpable mental state. *Engelmann*, 840 N.W.2d at 166.

Springer argues his case is not analogous to *Nelsen* and *Engelmann*, but rather closer to the facts of *Bieber* and *Wheeler*. *See Bieber*, 824 N.W.2d 514; *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Wheeler*, 824 N.W.2d 505 (Iowa 2012). In *Bieber*, we suspended an attorney's license for six months for preparing one HUD–1 form that reflected an inflated sale price and concealed a cash kickback to the buyer. 824 N.W.2d at 517, 528. Bieber pled guilty to misprision of a felony and was subsequently sentenced to three years of probation and "was ordered to pay restitution to the lender in the amount of $37,969.99." *Id.* at 516. In contrast with *Engelmann*—which involved the same scheme—Bieber did not know the funds were being converted and genuinely believed the excess loan funds were being used to improve the home. *Id.* at 518. As well, Bieber's conviction stemmed from one single transaction, he was a less sophisticated real estate attorney, and most importantly, he did not knowingly steal another person's money. *Id.* at 522–24. Therefore, despite revoking Engelmann's license, we instituted a six-month suspension of Bieber's license. *Id.* at 528.

In *Wheeler*, an attorney applied for a loan to finance purchasing a home for his client, but falsely stated on the relevant documents that he was the purchaser and would be residing in the home. 824 N.W.2d at 508. We suspended his license for six months, finding that although he submitted false financial documents to a bank, "his intent was to obtain a loan from the bank, not for the bank to suffer a loss." *Id.* at 512. In addition to other mitigating factors, we emphasized that Wheeler did not intend "to misappropriate funds or aid [his client] in misappropriating funds." *Id.* at 513.

Here, Springer "knowingly executed a scheme to defraud a financial institution," and he "did so with the intent to defraud." In contrast with *Engelmann*, there was no finding that Springer intended for these institutions to suffer a loss. Springer testified at the disciplinary hearing that

> the bank was getting exactly what they wanted. My clients were going to make a little money. The sellers were going to get out of this bad debt. And buyers were happy that they were getting a new home. I didn't mean for anybody to get hurt, especially the banks. I thought I was actually helping them, giving them money.

Unlike *Nelsen* and *Engelmann*, Springer did not necessarily act with the specific intent of causing financial institutions to suffer a loss.

However, Springer knew if the second sale did not go through as planned, the financial institutions would have released their mortgage interests in the properties for no financial return. Although Springer arguably acted with a less culpable mental state than in *Engelmann* and *Nelsen*, he was more culpable than the attorneys in *Bieber* and *Wheeler*. He knew it was at least possible his misrepresentations would cause the financial institutions to suffer a loss. He also repeated the fraudulent conduct over the course of two years.

With respect to actual harm suffered, Springer's case also factually differs from *Nelsen* and *Engelmann*. In *Nelsen*, the attorney "assisted [his clients] in diverting at least $141,355.34 of [his clients'] accounts receivable from the control of the [court-appointed] receiver." 807 N.W.2d at 265. In *Engelmann*, the court ordered the attorney to pay $392,937.73 in restitution. 840 N.W.2d at 158. Indeed, in *Bieber*, 824 N.W.2d at 516, the attorney was required to pay $37,969.99 in restitution, and in *Wheeler*, 824 N.W.2d at 509, the attorney was required to pay $821,134. Here, Springer was ordered to pay a fine of $15,000, which represented the amount Springer received in closing fees from the fraudulent scheme. In stark contrast to *Nelsen* and *Engelmann*, Springer's false representations did not result in any converted funds or actual losses to the financial institutions. Further, the criminal sanctions imposed for the conduct engaged in by the attorneys in *Nelsen* and *Engelmann* were significantly more severe than the court imposed on Springer.

We also consider the mitigating factors presented by Springer, including the absence of any disciplinary record. *See Bieber*, 824 N.W.2d at 527 ("Bieber's lack of a prior disciplinary record is an important mitigating factor."). We consider his active involvement in his community. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Boles*, 808 N.W.2d 431, 442 (Iowa 2012) ("Another significant mitigating factor in this case is Boles' admirable record of volunteer community service to local youth programs and his extensive pro bono practice."). He also cooperated with the Board during this proceeding. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Denton*, 814 N.W.2d 548, 551 (Iowa 2012) (finding attorney's cooperation with the Board to be a mitigating factor). As well, contrary to the conclusion of the commission, we find Springer introduced sufficient evidence, including a number of affidavits by attorney-witnesses, to demonstrate he is well respected in the legal community. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Lustgraaf*, 792 N.W.2d 295, 301 (Iowa 2010) (finding attorney's "good reputation in the legal community" to be a mitigating factor). Finally, Springer has closed approximately 5000 loans without incident since 2011. *See Boles*, 808 N.W.2d at 442 ("[C]orrective measures do not absolve [an attorney's] past problems, but are a mitigating factor.").

We also consider aggravating factors. First, the nature of his violations calls into question his fitness to practice law. Springer's conviction of bank fraud undermines the public's confidence in attorneys and their trustworthiness. Indeed, we have continually affirmed

> [f]undamental honesty is the base line and mandatory requirement to serve in the legal profession. The whole structure of ethical standards is derived from the paramount need for lawyers to be trustworthy. The court system and the public we serve are damaged when our officers play fast and loose with the truth.

*Bieber*, 824 N.W.2d at 523 (alteration in original) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kallsen*, 814 N.W.2d 233, 239 (Iowa 2012)). Second, Springer did not perform one improvident closing,

but rather seven transactions that spanned nearly two years. Springer's conduct establishes a pattern of misconduct. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Gallner*, 621 N.W.2d 183, 187 (Iowa 2001) ("Normally, a pattern of misconduct gives rise to enhanced sanctions."). Third, Springer repeatedly filed false HUD–1 forms despite performing between 10,000 and 12,000 closings prior to his clients' scheme. Springer was a sophisticated real estate attorney, and "[w]e expect an attorney who specializes in a particular field to be more aware and responsible." *Engelmann*, 840 N.W.2d at 164. Finally, during the disciplinary hearing, Springer denied that (1) his HUD–1 forms were fraudulent, (2) he knew they were fraudulent when he submitted them to the financial institutions, and (3) his conduct violated our rules of professional conduct. "Minimizing or failing to take responsibility for one's misconduct is an aggravating factor." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Stowers*, 823 N.W.2d 1, 17 (Iowa 2012).

Overall, the sanction in this case falls between the revocation imposed in *Nelsen* and *Engelmann* and the six-month suspension imposed in *Bieber* and *Wheeler*. While Springer's conduct more resembles the conduct in *Nelsen* and *Engelmann*, it is apparent that Springer lacked the specific intent to convert funds. Considering all the circumstances, we conclude Springer's license to practice law in Iowa should be suspended for a period of two years.

### V. Conclusion.

We suspend the license of Jason Springer to practice law in this state with no possibility of reinstatement for a period of two years from the date his present suspension commenced. This suspension shall apply to all facets of the practice of law. *See* Iowa Ct. R. 34.23(3). Springer shall comply with all requirements of the court rules associated with his suspension. *See id.* rs. 34.23(1)–(4), .24(1)–(2). Upon any application for reinstatement, Springer shall have the burden to show he has not practiced law during the period of suspension and that he meets all requirements of Iowa Court Rule 34.25. The costs of this proceeding are assessed against Springer. *Id.* r. 36.24(1).

### LICENSE SUSPENDED.

All justices concur except Wiggins, J., who dissents.

WIGGINS Justice (dissenting).

I dissent. I would revoke Jason Springer's license to practice law for the reasons stated in my dissent in *Iowa Supreme Court Attorney Disciplinary Bd. v. Bieber*, 824 N.W.2d 514, 530–34 (Iowa 2012) (Wiggins, J., dissenting). A revocation allows him the opportunity to reapply for his license after at least five years under our recently amended Iowa Court Rule 34.25(7)–(9).