# IN THE SUPREME COURT OF IOWA

No. 21–1799

Submitted April 20, 2022—Filed May 13, 2022

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Appellee,

vs.

**ANDREW GATTON AEILTS,**

Appellant.

On review of the report of the Iowa Supreme Court Grievance Commission.

In an attorney disciplinary action, the grievance commission recommends a six-month suspension for the attorney's violation of rules of professional conduct. **LICENSE SUSPENDED.**

Oxley, J., delivered the opinion of the court, in which all justices joined.

Tara van Brederode, Lawrence F. Dempsey IV, and Crystal W. Rink (until withdrawal), for appellee.

Matthew M. Boles and Adam C. Witosky of Gribble Boles Stewart & Witosky Law, Des Moines, for appellant.

**OXLEY, Justice.**

Honesty is the hallmark of the legal profession. It should go without saying that misrepresenting facts to a court and to law enforcement violates the rules of professional conduct Iowa attorneys take an oath to uphold. Attorney Andrew Aeilts appears before us after: receiving an OWI, falsely reporting a crime, and misrepresenting his professional experience during allocution to the court sentencing him on the resulting malicious prosecution charge in an effort to excuse his conduct. The Iowa Supreme Court Grievance Commission recommends we suspend Aeilts's license for six months for his violations of Iowa Rules of Professional Conduct 32:8.4(b), 32:8.4(c), and 32:8.4(d). Upon our de novo review of the record, we suspend Aeilts's license for six months.

**I. Background Facts and Proceedings.**

Andrew Aeilts was admitted to practice law in Iowa in 2015. He maintains a private law practice with his wife in Pella, Iowa.

The conduct bringing Aeilts to the Board's attention began on August 21, 2018, when Randy Cornelison, the father of one of Aeilts's clients, called Aeilts to complain about the lack of progress on his son's custody case and to get his son's retainer back. During the phone call, Cornelison told Aeilts he was going to file an ethics complaint against him. Later that day, Aeilts told Pella Police Officer Tim Donelson that Cornelison threatened to physically assault him during the telephone call. Aeilts requested that harassment charges be brought against Cornelison and sought a no-contact order. Donelson asked Aeilts if he

had a recording of the conversation. Aeilts replied he did not but that he was not afraid to testify and informed Donelson that Cornelison had a criminal history.

Donelson contacted Cornelison during his investigation. Cornelison denied making any threats against Aeilts and provided a recording of the conversation as proof. At no point during the three-minute-and-thirty-two-second audio recording did Cornelison make any threats that he was going to physically assault or harm Aeilts. On October 1, Aeilts was charged with Malicious Prosecution in violation of Iowa Code section 720.6 and with False Report of an Indictable Offense to a Public Entity in violation of Iowa Code section 718.6(1) for his conduct related to pressing harassment charges against Cornelison.

The second incident giving rise to the Board's complaint against Aeilts occurred less than a month later on September 16, when Aeilts drove while intoxicated. Around 3:40 a.m., Aeilts drove his vehicle off of the roadway, through a cornfield causing damage to the field and to his vehicle, and then drove approximately six miles with a damaged windshield before being stopped by law enforcement. Aeilts was arrested by the Marion County Sheriff's Office for Operating While Under the Influence First Offense in violation of Iowa Code section 321J.2(2)(a). The Marion County Sheriff's Office also cited Aeilts for Failure to Maintain Control in violation of Iowa Code section 321.288(1).

Prior to being booked into the Marion County jail, Aeilts sent Assistant Marion County Attorney Mathias Robinson two text messages at 5:28 a.m. that read: "Need help" and "911." Aeilts knew Robinson socially and occasionally

communicated with him by text message regarding cases. Less than an hour later, Aeilts blew a .122 on a breathalyzer. Later in the day, Robinson responded to Aeilts's texts asking, "What's up?" Aeilts responded with two more text messages: "Made a mistake that'll be coming across your desk. Hopeful we can work something out," and "And hopeful we can do so quickly and quietly if possible."

Aeilts pleaded guilty to the Operating While Intoxicated Charge on June 13, 2019, and the court granted a deferred judgment on July 26. The court placed Aeilts on supervised probation for one year, imposed a civil penalty, and required Aeilts to complete fifteen hours of unpaid community service.

Aeilts ultimately tendered an *Alford*[1] plea to the Malicious Prosecution charge in exchange for dismissal of the False Reporting charge. At his sentencing hearing on February 18, 2020, Aeilts stated during his allocution to the court:

> I would like for the record's sake to clarify a misrepresentation that was made about my history. At the time of the facts giving rise to this case, I was not a criminal defense attorney. I had handled maybe two or three OWIs. I had never handled anything else. I was not a criminal defense attorney. I didn't know the elements of harassment. . . .
>
> . . . .
>
> I did not know -- I was not a criminal attorney -- that to get a no-contact order from law enforcement it required criminal charges. As my professional statement, I did not know that to be true. I had never handled a harassment charge. I had never handled so much as a simple assault.

---

[1]*North Carolina v. Alford*, 400 U.S. 25 (1970).

In reality, Aeilts had represented clients in at least twenty-two criminal matters on charges that included OWI, trespass, assault, disorderly conduct, two different harassment charges, burglary, neglect of a dependent person, child endangerment, and drug possession. Ten were misdemeanor OWIs; two were felonies. The court sentenced Aeilts to three days in the Wayne County Jail and a $315 fine on the Malicious Prosecution charge.

On April 27, 2021, the Board filed an ethics complaint against Aeilts alleging that Aeilts violated the following Rules of Professional Conduct: rule 32:8.4(b), based on Aeilts's criminal convictions for malicious prosecution and OWI; rule 32:8.4(c), based on Aeilts's misrepresentations to Officer Donelson concerning Cornelison's threats of physical violence and his separate misrepresentations about his professional experience during his sentencing allocution; and rule 32:8.4(d), based on Aeilts's misrepresentations that subjected Cornelison to criminal charges and his text messages to Robinson, the Assistant Marion County Attorney, related to his OWI charges.

The parties waived a formal hearing and submitted the matter on the basis of a Partial Stipulation. The parties agreed that Aeilts violated rule 32:8.4(b) and rule 32:8.4(d) with respect to the Malicious Prosecution charge, but Aeilts argued his actions did not violate rule 32:8.4(c) and his texts to Robinson did not violate rule 32:8.4(d). The commission concluded that Aeilts violated all the rules alleged by the Board but agreed with Aeilts that he did not violate rule 32:8.4(d) when he texted the assistant county attorney. The commission recommended Aeilts's license to practice law be suspended for six months. Aeilts appealed.

**II. Standard of Review.**

We review the alleged violations and evidence de novo to ensure that the Board has proven each allegation of misconduct by a convincing preponderance of the evidence. *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Willey*, 965 N.W.2d 599, 605 (Iowa 2021). The convincing preponderance of the evidence standard is "less demanding than proof beyond a reasonable doubt, but requires a greater showing than the preponderance of the evidence." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Adams*, 809 N.W.2d 543, 545 (Iowa 2012).

**III. Ethical Violations.**

Aeilts's appeal centers on whether he violated rule 32:8.4(c) by misrepresenting facts to Officer Donelson and misrepresenting his experience to the sentencing court. However, because we review attorney disciplinary matters de novo, we address each alleged violation. After conducting our review, we agree with the Board and the commission that Aeilts violated all of the alleged rules.

**A. Iowa Rule of Professional Conduct 32:8.4(b).** Rule 32:8.4(b) prohibits a lawyer from "commit[ing] a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects." Iowa R. Prof'l Conduct 32:8.4(b). When assessing whether a lawyer has violated rule 32:8.4(b), we consider "[t]he nature and circumstances of the act . . . to determine if the commission of the criminal act reflects adversely on the attorney's fitness to practice law." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Schmidt*, 796 N.W.2d 33, 40 (Iowa 2011) (omission and alteration in original) (quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Templeton*, 784 N.W.2d 761, 767 (Iowa 2010)). "One's fitness

to practice law . . . is determined by more than one's competency in legal matters. It includes one's [moral] character and one's suitability to act as an officer of the court." *Id.* (omission in original) (quoting *Iowa Sup. Ct. Bd. of Prof'l Ethics & Conduct v. Mulford*, 625 N.W.2d 672, 683 (Iowa 2001) (en banc)). The following considerations factor into our determination of whether there was a rule 32:8.4(b) violation:

> the lawyer's mental state; the extent to which the act demonstrates disrespect for the law or law enforcement; the presence or absence of a victim; the extent of actual or potential injury to a victim; and the presence or absence of a pattern of criminal conduct.

*Id.* (quoting *Templeton*, 784 N.W.2d at 767).

Aeilts's conduct easily meets this standard. Aeilts drove his car through a cornfield, damaging his vehicle and the field, and placed other drivers at risk of injury when he then drove another six miles before being stopped. He was clearly intoxicated during the incident as he later blew a .122. *See Iowa Sup. Ct. Att'y Disciplinary Bd. v. Cannon*, 821 N.W.2d 873, 878 (Iowa 2012) (concluding attorney violated rule 32:8.4(b) based on conviction for OWI, first offense, where he damaged the parking lot of a grocery store and operated "a motor vehicle while intoxicated 'creat[ing] . . . grave risk of potential injury' to others" (omission in original) (quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Weaver*, 812 N.W.2d 4, 11 (Iowa 2012))). Aeilts also falsely subjected Cornelison to criminal charges for harassment based on his misrepresentations to Officer Donelson—charges Cornelison was able to avoid only because he had an audio recording of the phone call. Aeilts's malicious attempt to send Cornelison to jail in an effort to prevent him from filing an ethics complaint against Aeilts displays his lack of

honesty and reflects adversely on his fitness as a lawyer. His actions reveal a disrespect for the law and law enforcement. We conclude Aeilts violated rule 32:8.4(b).

**B. Iowa Rule of Professional Conduct 32:8.4(c).** Rule 32:8.4(c) bars a lawyer from "engag[ing] in conduct involving dishonesty, fraud, deceit, or misrepresentation." Iowa R. Prof'l Conduct 32:8.4(c). A lawyer may violate rule 32:8.4(c) when he fails to disclose a material fact. *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Haskovek*, 869 N.W.2d 554, 560 (Iowa 2015). The Board must prove the lawyer "acted with 'some level of scienter' rather than mere negligence." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Beauvais*, 948 N.W.2d 505, 515 (Iowa 2020) (quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Meyer*, 944 N.W.2d 61, 69 (Iowa 2020)). "An attorney's 'casual, reckless disregard for the truth' also establishes sufficient scienter to support a violation of the rule." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Marzen*, 949 N.W.2d 229, 239 (Iowa 2020) (quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Muhammad*, 935 N.W.2d 24, 38 (Iowa 2019)). When determining whether a lawyer violated rule 43:8.4(c), we focus on "whether the effect of the lawyer's conduct is to mislead rather than to inform." *Haskovek*, 869 N.W.2d at 560.

We turn first to Aeilts's misrepresentations during his allocution. We reject Aeilts's arguments that his misrepresentations to the court were not knowing or intentional but due to his negligence and incompetence. Aeilts made several misrepresentations during his allocution on February 18, 2020: he told the court that he was not a criminal defense attorney, he had only handled two or three

OWI cases, he had never handled any other criminal cases, he did not know the elements of harassment, he had never handled a harassment case, and he had never handled an assault case. All of these representations to the court were false. Aeilts had represented clients in at least twenty-two criminal cases beginning in 2015, rather than just two or three OWIs as he stated. Ten of the cases were OWIs, and he represented other clients in a range of charges from criminal trespass to drug possession. Although he said he had never even handled a simple assault, he had actually represented clients for assault in two separate criminal cases. Finally, he certainly should have known the elements of harassment after representing two clients against harassment charges—another misrepresentation since he told the court that he had "never handled a harassment charge." Aeilts's dishonest statements misled the court about his prior criminal work experience.

Aeilts maintains that he did not intentionally make false statements to the court, relying on *Iowa Supreme Court Attorney Disciplinary Board v. Sobel*, 779 N.W.2d 782 (Iowa 2010). In *Sobel*, an attorney inaccurately testified at a postconviction hearing about whether two of his clients were present at a sentencing hearing, which took place two years prior to his testimony. *Id.* at 783–85. Recognizing the potential for someone to not have perfect recollection of an event, we remarked that "the inability of a person to accurately recall an event does not necessarily lead to the conclusion that the person's inaccurate recollection is an expression of dishonesty or deceit." *Id.* at 787–88. Inaccurately recalling a client's presence at a hearing two years prior is a far cry from

inaccurately recalling one's own experience and the types of cases worked on. At the time of his allocution, Aeilts had only been practicing for five years. We reject his insistence that his statements to the court that he "was not a criminal attorney" and "had handled maybe two or three OWIs" were inaccurate "off-the-cuff" statements made in the heat of the moment when he was under stress in response to the prosecution's request for a heavier sentence. First, Aeilts's allocution statements were not off-the-cuff nervous chatter but were made, in his words, specifically to "clarify a misrepresentation that was made about [his] history." Second, we are particularly troubled by Aeilts's attempt to minimize his experience to look more favorable to the sentencing judge. Even when, or more pointedly especially when, an attorney appears before a court as a criminal defendant, we expect him to display the utmost candor.

Nor does *Committee on Professional Ethics & Conduct of The Iowa State Bar Association v. Ramey*, 512 N.W.2d 569 (Iowa 1994) (en banc), help Aeilts's case. In fact, it does the opposite. In *Ramey*, we held that a prosecutor's statement to the district court that he personally checked the serial numbers on the bills he was offering as an exhibit with the serialized list was a misrepresentation in violation of DR 1–102(A)(4), the precursor to rule 32:8.4(c). *Id.* at 572. We stated, "[I]t does not appear that Ramey was attempting to deceive the court. But even if he simply misspoke, it was still a matter constituting misconduct." *Id.* at 571–72. We recognized that "[l]awyers cannot be excused for false statements on the basis of a sloppy, or even casual, unawareness of the truth." *Id.* at 571. Under *Ramey*, an attorney who misrepresents the truth based on a "sloppy" or "casual"

unawareness of the truth must still be held accountable. Even if we credited Aeilts's argument that he forgot the details of his practice in the heat of the moment, which we don't, his sloppy or casual misrepresentations during his own sentencing allocution would still violate rule 32:8.4(c) under *Ramey*.

Whether the district court relied on his misrepresentations when imposing his sentence is irrelevant to our analysis. An attorney only need to have made a false statement to a court with the "aim to mislead" to violate the rule, *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Suarez-Quilty*, 912 N.W.2d 150, 158 (Iowa 2018), a fact we think is clear from the record of Aeilts's allocution. We need not decide whether Aeilts intentionally misled the court. Instead, it is enough that Aeilts made the false statements with a "casual, reckless disregard for the truth." *Marzen*, 949 N.W.2d at 239 (quoting *Muhammad*, 935 N.W.2d at 28).

Finally, we reject Aeilts's argument that the Board must have concluded his misrepresentations were unintentional because it did not charge him with violating rule 32:3.3, which requires candor toward a tribunal. Iowa R. Prof'l Conduct 32:3.3. Our decision in *Iowa Supreme Court Attorney Disciplinary Board v. Rhinehart*, 827 N.W.2d 169 (Iowa 2013), defeats Aeilts's position. In *Rhinehart*, we determined that rule 32:3.3 "target[s] only the conduct of an attorney while serving as an advocate representing a client." *Id.* at 176 (recognizing that rule 32:3.3 is found in the "Advocate" section of the rules). While "Rhinehart did not violate rule 32:3.3 because he was not serving as an advocate representing a client in the dissolution proceeding," *id.* at 177, his fraudulent behavior in his

own dissolution case did violate rule 32:8.4(c), *id.* at 180. We agree with the commission that Aeilts's conduct during his allocution violated rule 32:8.4(c).

Aeilts also misrepresented material facts to law enforcement when he reported to Officer Donelson that Cornelison threatened to physically assault him, seeking to press criminal charges for harassment and obtain a no-contact order. The recorded conversation revealed that Cornelison made no such threat. We reject Aeilts's attempt to chalk his actions up to inexperience. "[F]or purposes of attorney discipline, offenses against common honesty should be clear even to the youngest lawyers . . . ." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Stoller*, 879 N.W.2d 199, 212 (Iowa 2016) (quoting 7A C.J.S. *Attorney & Client* § 103, at 24 (2015)).

> [T]he law takes account of a lawyer's legal training and experience in assessing his or her state of mind. A lawyer is an adult, a man or woman of the world, not a child. He or she is also better educated than most people, more sophisticated and more sharply sensitized to the legal implications of a situation. The law will make inferences as to a lawyer's knowledge with those considerations in mind.

*Iowa Sup. Ct. Att'y Disciplinary Bd. v. Kozlik*, 943 N.W.2d 589, 597 (Iowa 2020) (quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Barry*, 762 N.W.2d 129, 139 (Iowa 2009)). Aeilts's alleged inexperience provides no excuse for his violation of this rule.

Aeilts's assertions that he did not know alleging a threat of bodily harm was an indictable offense and that he did not intend for Cornelison to be charged with an indictable offense are also without merit. After telling Officer Donelson about Cornelison's alleged threats, he specifically "requested that harassment charges be brought against Cornelison." Whether Aeilts was requesting a simple

misdemeanor harassment charge or an indictable harassment charge, he still made misrepresentations to the police with potentially serious criminal consequences for Cornelison. Aeilts's conduct had the effect to mislead rather than inform and was a violation of rule 32:8.4(c).

**C. Iowa Rule of Professional Conduct Rule 32:8.4(d).** Under rule 32:8.4(d), "It is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice." Iowa R. Prof'l Conduct 32:8.4(d).

> An attorney's conduct is prejudicial to the administration of justice when it violates the "well-understood norms and conventions of the practice of law" such that it hampers "the efficient and proper operation of the courts or of ancillary systems upon which the courts rely."

*Rhinehart*, 827 N.W.2d at 180 (quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Axt*, 791 N.W.2d 98, 102 (Iowa 2010)). Here, Aeilts sought to have Cornelison prosecuted for harassment, having no reasonable grounds for believing he committed harassment; Aeilts's report caused law enforcement and prosecutorial resources to be diverted in an investigation; and Aeilts's conduct hampered the efficient and proper operation of the ancillary systems upon which the courts rely. We agree that as a result of this conduct, law enforcement and court resources were diverted in an unnecessary investigation of Aeilts's charges against Cornelison. Aeilts's conduct with regard to the Malicious Prosecution conviction violated rule 32:8.4(d).

The parties dispute whether Aeilts's conduct during his arrest for OWI violated rule 32:8.4(d) when he sent text messages to Assistant County Attorney Robinson. Although Aeilts sent Robinson several text messages, Robinson did

not intervene in Aeilts's pending OWI case. In fact, Robinson did not work on the case at all. Instead, a prosecutor from another county handled Aeilts's case. Further, the messages were not unlike requests for leniency and a quick disposition an attorney might ask for any other client. On their face, there was nothing untoward about the messages. We agree with the commission that Aeilts's conduct in texting Robinson did not interfere with or prejudice the administration of justice and did not violate rule 32:8.4(d).

In summary, we conclude Aeilts violated rules 32:8.4(b), 32:8.4(c), and 32:8.4(d).

**IV. Sanction.**

When determining the appropriate sanction, "[w]e respectfully consider the commission's findings and recommendations, but they do not bind us." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Wheeler*, 824 N.W.2d 505, 509 (Iowa 2012). We do not apply a standard sanction in particular types of attorney disciplinary cases. *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Blessum*, 861 N.W.2d 575, 591 (Iowa 2015). Instead, we take into consideration the "totality of facts and circumstances" in each case. *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Deremiah*, 875 N.W.2d 728, 737 (Iowa 2016). Our considerations include "the nature of the violations, the need for deterrence, protection of the public, maintenance of the reputation of the bar as a whole, and the attorney's fitness to continue practicing law, as well as any aggravating or mitigating circumstances." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Bartley*, 860 N.W.2d 331, 337 (Iowa 2015). The Board recommends a six-month suspension, while Aeilts asks for thirty days.

**A. Review of Analogous Cases.** "[M]isrepresentation is 'a serious breach of professional ethics.' " *Id.* at 338 (quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Gottschalk*, 729 N.W.2d 812, 821 (Iowa 2007)). "Depending on the severity of the misrepresentations, [this Court] ha[s] imposed sanctions ranging from reprimand to license revocation." *Id.*; *see also Iowa Sup. Ct. Att'y Disciplinary Bd. v. Kieffer-Garrison*, 951 N.W.2d 29, 38 (Iowa 2020) (holding the court generally subjects "attorneys who actively disregard this fundamental baseline [of honesty]" to sanctions ranging from six-month license suspension to revocation); *Beauvais*, 948 N.W.2d at 518 (suspending lawyer for three months for falsely claiming to the court and opposing counsel that his client had accepted a settlement and misrepresenting to his client that she would be punished by the court if she did not sign the settlement agreement). We have imposed suspensions ranging from sixty days to eighteen months "for engaging in conduct prejudicial to the administration of justice when compounded by additional violations." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Turner*, 918 N.W.2d 130, 153–54 (Iowa 2018).

In *Iowa Supreme Court Attorney Disciplinary Board v. Wheeler*, we found Wheeler violated rules 32:8.4(b) and 32:8.4(c) after he was convicted for making a false statement to a financial institution on a mortgage application. 824 N.W.2d at 510–11. We considered several mitigating factors including: his lack of disciplinary history, community service, remorse, cooperation with the Board, and that it was an isolated incident. *Id.* at 513. We suspended Wheeler's license for six months. *Id.* In *Iowa Supreme Court Attorney Disciplinary Board v.*

*McGinness*, we found an attorney violated rules 32:8.4(c) and 32:8.4(d) when he falsified the certificate of service on civil discovery requests he failed to send to opposing counsel and then doubled down to the point of hiring a handwriting expert to support his insistence he had not copied the certificate from another filing when confronted. 844 N.W.2d 456, 462–63 (Iowa 2014). McGuinness only admitted his actions after the district court granted the opposing counsel's motion for discovery sanctions to the tune of $7,500. *Id.* at 460. We found especially aggravating that he "had numerous opportunities to withdraw from his perilous course, but instead simply dug himself into a progressively deeper ethical pit." *Id.* at 466. Characterizing his conduct as "an extraordinary one-time occurrence that is out of character for him," we suspended his license for six months to "protect the integrity of the judicial system and the lawyers who work within it." *Id.* at 467.

The sanction for an OWI and additional criminal conduct ranges from public reprimand up to a two-year license suspension. *See Iowa Sup. Ct. Att'y Disciplinary Bd. v. Keele,* 795 N.W.2d 507, 509–10 (Iowa 2011) (discussing lawyer's prior public reprimand for his convictions of OWI and possession of drug paraphernalia); *Cannon,* 821 N.W.2d at 882–83 (suspending lawyer's license for thirty days for convictions for operating a boat while intoxicated, possession of cocaine, and OWI); *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Johnson,* 774 N.W.2d 496, 499, 501 (Iowa 2009) (per curiam) (suspending lawyer's license for six months for third offense OWI), *overruled in part by Templeton,* 784 N.W.2d at

768; *Weaver*, 812 N.W.2d at 13, 16 (suspending lawyer's license for two years for second offense OWI and harassment in the third degree).

An analogous OWI disciplinary case is *Iowa Supreme Court Attorney Disciplinary Board v. Khowassah*, 837 N.W.2d 649 (Iowa 2013). In *Khowassah*, we found an attorney violated rule 32:8.4(b) when he committed his second OWI and rule 32:8.4(c) because he kept military leave pay that he was not entitled to receive. *Id.* at 654–56. We considered his cooperation with the Board, completion of substance abuse and mental health treatment, and his acceptance of responsibility as mitigating factors. *Id.* at 657–58. We suspended his license for three months. *Id.*

The Board points out one attorney disciplinary case involving malicious prosecution: *Iowa Supreme Court Board of Professional Ethics & Conduct v. Postma*, 555 N.W.2d 680 (Iowa 1996). In *Postma*, we found an attorney violated the Code of Professional Responsibility when he maliciously filed criminal complaints against eleven different people who had brought ethics complaints against him. *Id.* at 682–83. We also found Postma committed other violations of our professional rules because he failed to obey a court order, failed to file several years of tax returns, neglected two estates, and failed to respond to the Board. *Id.* at 683. We revoked Postma's license. *Id.* Aeilts argues that prior cases involving frivolous filings are more comparable to his case. *See Iowa Sup. Ct. Att'y Disciplinary Bd. v. Widdison*, 960 N.W.2d 79, 98 (Iowa 2021) (suspending lawyer's license for ninety days because he filed a frivolous case against his ex-wife); *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Barnhill*, 885 N.W.2d 408, 426–27

(Iowa 2016) (suspending lawyer's license for six months for filing a frivolous counterclaim against a former client). While Aeilts's conduct is not as egregious as Postma's, which led to the revocation of his license, his false accusations that could have subjected Cornelison to criminal charges are more serious than Postma's filing of frivolous civil claims. We give each of these cases their due weight.

Cases involving false statements have a wide range of sanctions. *See Iowa Sup. Ct. Att'y Disciplinary Bd. v. Gailey*, 790 N.W.2d 801, 805–08 (Iowa 2010) (suspending lawyer's license for sixty days for aiding and abetting a violation of a no-contact order between his son and his son's wife and offering her an inducement to testify in a certain way in his son's pending criminal matter); *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Stowers*, 823 N.W.2d 1, 7–17 (Iowa 2012) (suspending a lawyer's license for ninety days after he sent emails to his wife's former employer threatening to expose confidential information in violation of a protective order in an attempt to get her former employer to make a large cash donation to a charity in his wife's name); *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Casey*, 761 N.W.2d 53, 59–61 (Iowa 2009) (per curiam) (suspending lawyer for three months for misrepresenting the marital status of the decedent of an estate on court and tax documents); *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Barry*, 908 N.W.2d 217, 234–35 (Iowa 2018) (suspending lawyer's license for one year after lawyer advised his client that he had filed his dissolution petition and then created a fraudulent divorce decree). We consider these cases in assessing an appropriate suspension in this case.

**B. Mitigating and Aggravating Factors.** We must consider any mitigating or aggravating factors before we determine a sanction. *Marzen*, 949 N.W.2d at 243. There are several present here.

Aeilts completed eight years of service in the Armed Forces, which we consider a mitigating factor. *See Iowa Sup. Ct. Att'y Disciplinary Bd. v. Clarity*, 838 N.W.2d 648, 660 (Iowa 2013) (treating "prior military service" as a mitigating factor). He has no prior discipline, which we also consider a mitigating factor, though we give this factor little weight because his misconduct began shortly after he was admitted to the bar. *See Iowa Sup. Ct. Att'y Disciplinary Bd. v. Sears*, 933 N.W.2d 214, 225 (Iowa 2019) (recognizing that attorney's lack of prior discipline was considered a mitigating factor; however, it did not weigh heavily because the misconduct started five months after the attorney was admitted to the Iowa bar). Aeilts has engaged in community service and has represented underrepresented communities, which are also mitigating factors. *See Iowa Sup. Ct. Att'y Disciplinary Bd. v. Said*, 953 N.W.2d 126, 155 (Iowa 2021) (holding attorney's representation of "an underserved population" is a mitigating factor). Finally, Aeilts cooperated with the Board, which is a mitigating factor. *See Iowa Sup. Ct. Att'y Disciplinary Bd. v. Watkins*, 944 N.W.2d 881, 893 (Iowa 2020).

Aeilts argues lack of harm to clients is a significant mitigating factor for his actions. We disagree. In response to Cornelison's request for the return of his son's $400 retainer, Aeilts filed a false police report and requested harassment charges be brought against Cornelison. Had Cornelison not provided the recording of the conversation to the police, he could have faced criminal charges

and potentially incarceration and wrongful conviction. Although Cornelison was not his client, the incident arose from Aeilts's representation of a client. Aeilts's argument also ignores the serious potential ramifications of his conduct to an innocent person as well as to the criminal justice system. Regardless of whether anyone was actually harmed, Aeilts's conduct was an aggravating, not a mitigating, factor for Aeilts's actions in this case. *See Iowa Sup. Ct. Att'y Disciplinary Bd. v. Moonen*, 706 N.W.2d 391, 402 (Iowa 2005) (holding that "[h]arm to others" is an aggravating factor).

Aeilts also argues his conduct occurred over a short three-week period, and therefore, the temporal overlap is a mitigating factor. *See Iowa Sup. Ct. Att'y Disciplinary Bd. v. Cunningham*, 812 N.W.2d 541, 553 (Iowa 2012) (determining we will not view a lawyer's prior discipline as an aggravating factor when the conduct occurred during the same timeframe as the current violation before the court). But Aeilts's conduct was not limited to a three-week timeframe; Aeilts misrepresented his professional experience to the court during his allocution over a year after he made the false police report. There is no temporal overlap to mitigate Aeilts's conduct, and we reject his argument to the contrary.

Finally, we reject Aeilts's assertion that his lack of experience is a mitigating factor. "Lawyers of *any* level of experience would understand that [making misrepresentations to the court is] deplorable." *Turner*, 918 N.W.2d at 155 (citing *In re Cleland*, 2 P.3d 700, 705 (Colo. 2000) (en banc) (per curiam) (considering inexperience as a mitigating factor but noting "inexperience does not go far . . . to excuse or to mitigate dishonesty, misrepresentation"); *see also*

*In re Powell*, 76 N.E.3d 130, 135 n.3 (Ind. 2017) (per curiam) (noting inexperience will generally not be a mitigating factor in cases involving dishonesty)).

Against the mitigating factors present in this case we balance any aggravating factors. We have already found Aeilts's attempt to harm Cornelison with false criminal allegations to be an aggravating factor. Aeilts committed multiple rule violations involving conduct from two unrelated events. The nature of those violations is also an aggravating factor. *See McGinness*, 844 N.W.2d at 463–64. Specifically, Aeilts misrepresented facts to law enforcement and to the court during two separate incidents.

> [F]undamental honesty is the base line and mandatory requirement to serve in the legal profession. The whole structure of ethical standards is derived from the paramount need for lawyers to be trustworthy. The court system and the public we serve are damaged when our officers play fast and loose with the truth.

*Iowa Sup. Ct. Att'y Disciplinary Bd. v. Springer*, 904 N.W.2d 589, 597 (Iowa 2017) (quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Bieber*, 824 N.W.2d 514, 523 (Iowa 2012)). The nature of Aeilts's conduct is an aggravating factor in this case.

**C. Appropriate Sanction.** Based on Aeilts's violations and the aggravating and mitigating factors in this case, we agree with the Board and the commission that Aeilts's license should be suspended for six months. Aeilts's actions involved separate ethical violations that took away resources from law enforcement and the court, negatively reflected on the reputation of the bar as a whole, and could have negatively impacted Cornelison's liberty had Cornelison not had a recording of the phone call to exonerate himself. We typically impose a longer suspension where there is harm and multiple violations. *Iowa Sup. Ct. Att'y Disciplinary Bd.*

*v. Baldwin*, 857 N.W.2d 195, 215 (Iowa 2014). Therefore, we agree with the commission's and the Board's recommendations that Aeilts's license should be suspended for six months.

**V. Disposition.**

We suspend Andrew Aeilts's license to practice law with no possibility for reinstatement for six months. This suspension applies to all facets of the practice of law. Aeilts must comply with the notification requirements to his clients in Iowa Court Rule 34.24. We tax the costs of this action to Aeilts under Iowa Court Rule 36.24(1).

**LICENSE SUSPENDED.**